[Cite as *State v. Munye*, 2015-Ohio-3362.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 14AP-744 |
| v. | : | (M.C. No. 2013 TRC 193080) |
| Abukar M. Munye, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on August 20, 2015

*Richard C. Pfeiffer,* City Attorney, *Lara N. Baker,* City Prosecutor, and *Melanie R. Tobias,* for appellee.

*Yeura R. Venters,* Public Defender, and *John W. Keeling,* for appellant.

APPEAL from the Franklin County Municipal Court

HORTON, J.

{¶ 1} Defendant-appellant, Abukar M. Munye, appeals from a judgment of the Franklin County Municipal Court, finding him guilty pursuant to a jury verdict of one count of operating a vehicle while under the influence of drugs or alcohol, in violation of Columbus City Code ("C.C.C.") 2133.01(A)(1)(a) and, pursuant to a bench trial, of failing to use a turn signal, in violation of C.C.C. 2131.14(A), and of changing lines without safety, in violation of C.C.C. 2131.08(A)(1). Because the trial court properly instructed the jury and the officer possessed reasonable, articulable suspicion to conduct field sobriety tests ("FSTs"), we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   The facts giving rise to the charges at issue occurred in the early morning hours of November 4, 2013, when Officer Chase Rogers was on duty in the area of North High Street and East 11th Avenue. Officer Rogers observed defendant's vehicle change lanes without signaling, and the vehicle then made a U-turn directly in front of Officer Rogers' marked police cruiser. Officer Rogers activated his overhead lights and stopped defendant's vehicle. Upon approaching the vehicle, Officer Rogers "detected an odor of alcoholic beverage on [defendant's] breath, noticed [defendant's] eyes to be somewhat dilated, red shot -- red and bloodshot and glassy." (Trial Tr. 21.) Officer Rogers characterized the odor of alcohol as moderate, and noted that defendant's speech was somewhat slurred. Officer Rogers asked defendant if he had consumed any alcohol that evening, defendant said he had consumed "one or two beers." (Trial Tr. 23.)

{¶ 3}   Given these observations, Officer Rogers asked defendant to perform FSTs. Officer Rogers had defendant perform the horizontal gaze nystagmus test ("HGN"), the walk-and-turn test, and the one-leg stand test. Defendant's performance on each test reliably indicated that he had a blood alcohol content ("BAC") which was over the legal limit. Accordingly, after defendant completed the FSTs, Officer Rogers placed the defendant under arrest for OVI.

{¶ 4}   Officer Rogers then read BMV form 2255 to defendant, which explained that defendant would be subject to a mandatory suspension of his driver's license if he refused to submit to a chemical test of his breath to determine his BAC. Defendant indicated that he understood the form and signed the form accordingly, but defendant refused to submit to the chemical breath test. Thereafter, defendant "stated something to the effect of, [a]ll right, now maybe I will" take the breath test. (Trial Tr. 36.) However, Officer Rogers thought that defendant "still wasn't definite," and noted that, "[d]ue to the time restraints with obtaining a chemical test, it's imperative that we get a direct answer from them. If they drag it out longer, then the sample becomes invalid." (Trial Tr. 36.)

{¶ 5}   Prior to trial, defendant moved to suppress the evidence of the FSTs, defendant's statements to Officer Rogers, and Officer Rogers' observations of defendant. Defendant asserted that Officer Rogers lacked probable cause to arrest him for OVI, as

defendant emitted only a moderate odor of alcohol, there was no evidence of erratic driving, defendant performed well on the one-leg stand test, and defendant only failed the walk-and-turn test because Officer Rogers refused to answer defendant's questions mid-test.

{¶ 6} The trial court found that Officer Rogers had reasonable, articulable suspicion to stop defendant's vehicle, as there was "[n]o question [defendant] turned in the middle of High Street." (Suppression Tr. 73.) The court further concluded that Officer Rogers had reasonable, articulable suspicion to conduct the FSTs, citing the "moderate odor of alcohol, red, bloodshot eyes, slurred speech, [and] admitted drinking." (Suppression Tr. 74.) Regarding the walk-and-turn test and one-leg stand test, the court found "no question" that these tests "substantially complied" with all relevant requirements, including "instructions, observations and clues." (Suppression Tr. 74.) However, the court suppressed the results of the HGN test, as it found that Officer Rogers improperly administered the test.

{¶ 7} At trial, Officer Rogers agreed that the U-turn "in and of itself, [wasn't] indicative of impairment," that it was "possible" he mistook defendant's accent as slurred speech, and that defendant's eyes "appear[ed] somewhat red" in the courtroom. (Trial Tr. 54, 59, 109.) Officer Rogers also admitted that this was "not the most egregious OVI case" he'd ever seen. (Trial Tr. 92.)

{¶ 8} Defendant asserted that, although he initially refused to submit to the chemical breath test, he later retracted that refusal. Officer Rogers explained that, when he initially offered the test to defendant, defendant "refused outright." (Trial Tr. 94.) Officer Rogers stated that, as they "were talking in reference to [defendant's] vehicle" being impounded, defendant indicated that he might want to take the test. (Trial Tr. 94.) Officer Rogers believed defendant "was trying to broker a deal to not have his vehicle impounded." (Trial Tr. 94.) However, when Officer Rogers explained that it was police department policy that "all impaired drivers' vehicles must be impounded," there "was no mention of [taking the test] again." (Trial Tr. 94.)

{¶ 9} Officer Rogers stated that "any chemical sample of the breath" must be taken within "two hours" of reading BMV form 2255 to a defendant. (Trial Tr. 95.) Officer Rogers did not know how much time had elapsed between defendant's refusal

and his retraction, but stated that "[f]rom stop to when he was released was roughly an hour 20 minutes, hour 30 minutes." (Trial Tr. 95.) Officer Rogers also noted that, when defendant attempted to retract his refusal, the other officer who witnessed Officer Rogers read form 2255 to defendant "had already left and had already notarized the 2255," and Officer Rogers "had already completed that part of the paperwork indicating that [defendant] had refused." (Trial Tr. 106.)

{¶ 10} At the conclusion of trial, the court instructed the jury as follows regarding defendant's refusal to submit to the breath test:

> Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his breath to determine the amount of alcohol in his system for the purposes of suggesting that the defendant believes he was under the influence.
>
> If you find the defendant refused to submit to said test, you may, but are not required, to consider the evidence along with all the other facts and circumstances in deciding whether the defendant was under the influence of alcohol.

(Trial Tr. 183-84.) Defendant objected to this instruction, and the court overruled the objection.

{¶ 11} The jury found defendant guilty of OVI, the court found defendant guilty of the 2 minor misdemeanor traffic offenses. Following the sentencing hearing, the court sentenced the defendant to 180 days in jail, credited defendant with 3 days of time served, suspended the balance of the jail sentence, and sentenced defendant to a 2-year term of community control. The court also imposed a $375 fine and ordered defendant to pay court costs.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Defendant appeals, assigning the following errors for our review:

> [I.] THE TRIAL COURT ERRED WHEN, OVER OBJECTION, IT SELECTED A SINGLE FACT FROM THE EVIDENCE, THE DEFENDANT'S ALLEGED REFUSAL TO SUBMIT TO A BREATH TEST, AND GAVE UNDUE PROMINENCE TO THIS FACT BY TELLING THE JURORS THEY COULD CONSIDER THE REFUSAL IN DECIDING WHETHER THE DEFENDANT WAS UNDER THE INFLUENCE OF ALCOHOL WHEN THE EVIDENCE ALSO

INDICATED THAT THE DEFENDANT HAD TIMELY CHANGED HIS MIND AND HAD AGREED TO TAKE A BREATH TEST BUT THAT THE OFFICER REFUSED TO ADMINISTER THE TEST WITHOUT ANY LEGAL OR LOGICAL BASIS FOR THE OFFICER'S REFUSAL. THE TRIAL COURT FURTHER ERRED WHEN IT TOLD THE JURY THAT THE EVIDENCE INDICATED THAT THE DEFENDANT HAD REFUSED TO TAKE A TEST WHEN IT IS THE JURY'S ROLE TO DECIDE THE FACTS AND NOT THE COURT'S.

[II.] THE TRIAL COURT ERRED WHEN IT HELD THAT THE ARRESTING OFFICER HAD REASONABLE AND ARTICULABLE SUSPICIONS TO SUBJECT THE DEFENDANT TO FIELD SOBRIETY TESTS BASED ONLY UPON AN ODOR OF ALCOHOL, ADMISSION OF DRINKING, AND BLOODSHOT EYES WHEN THERE WAS NO ERRATIC DRIVING OR ANY PHYSICAL SIGNS OF IMPAIRMENT SUCH AS DIFFICULTIES WITH MOVEMENT OR LACK OF COORDINATION INDICATIVE OF IMPAIRED DRIVING OBSERVED BEFORE THE TESTS WERE GIVEN.

## II. FIRST ASSIGNMENT OF ERROR – JURY INSTRUCTIONS

{¶ 13} In his first assignment of error, defendant asserts that the trial court erred by providing the jury with the refusal instruction quoted above. Defendant asserts that the instruction "was an incomplete and therefore inaccurate conclusion as to what the evidence was and what it portrayed." (Appellant's Brief, 15.)

{¶ 14} Trial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the factfinder. *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus; *Columbus v. Aleshire,* 187 Ohio App.3d 660, 679, 2010-Ohio-2773, ¶ 6 (10th Dist.); *State v. Moody*, 10th Dist. No. 98AP-1371 (Mar. 13, 2001). An instruction is proper if it adequately informs the jury of the law. *State v. Conway,* 10th Dist. No. 03AP-585, 2004-Ohio-1222, ¶ 24. *See also State v. Daniels*, 10th Dist. No. 13AP-969, 2014-Ohio-3697, ¶ 22 (noting that "[w]here requested jury instructions are correct statements of the law as applied to the facts of the case, they should generally be given").

{¶ 15} "[A] trial court has broad discretion in instructing the jury." *State v. Daniels*, 10th Dist. No. 13AP-969, 2014-Ohio-3697, ¶ 17. "Therefore, when reviewing a

trial court's jury instruction, the proper standard of review for an appellate court is to determine whether the trial court's decision to give a requested jury instruction constitutes an abuse of discretion under the facts and circumstances of the case." *Id.* An appellate court will not reverse a conviction in a criminal case due to jury instructions unless the jury instructions amount to prejudicial error. *Moody,* citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph two of the syllabus.

{¶ 16} The trial court did not abuse its discretion by providing the jury with refusal instruction. The Supreme Court of Ohio expressly approved the jury instruction given herein in *Maumee v. Anistik*, 69 Ohio St.3d 339 (1994). In *Maumee*, the defendant was arrested for OVI and taken to the police station. Once at the station, an officer read the standard implied consent form to defendant and asked her to submit to a chemical test of her breath. The defendant indicated that she could not take the breath test because she was on medication, which she believed might affect the test results. The officer assured her that the medication would not affect the test results, and she agreed to take the test. However, after the defendant was denied access to the restroom and after she spoke with her attorney, she again refused to take the breath test.

{¶ 17} The trial court found that "circumstances may exist where the refusal to submit to a chemical test by a person suspected of driving while under the influence of alcohol is not based on consciousness of guilt." *Id.* at syllabus. Accordingly, the court held as follows:

> Where a person has been arrested for driving while under the influence of alcohol and is requested by a police officer to submit to a chemical test of his or her breath, but he or she refuses to take the test, and the reason given for the refusal is conditional, unequivocal, or a combination thereof, we approve the following jury instruction as set forth in 4 Ohio Jury Instructions (1993) 405, Section 545.25(10): "Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his [or her] breath to determine the amount of alcohol in his [or her] system, for the purpose of suggesting that the defendant believed he [or she] was under the influence of alcohol. If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol."

*Id.* at syllabus. The jury instruction provided by the court to the jury herein was the approved instruction from *Maumee*.

{¶ 18} Defendant contends that, although the court in *Maumee* "approved the giving of the refusal instruction in limited situations, it did so without addressing its past precedent indicating that the court should not comment on specific facts." (Appellant's Brief, 27.) However, the court in *Maumee* specifically stated that a "trial judge should not invade the province of the jury" as the trier of fact. *Id.* at 343-44. Defendant further contends that the *Maumee* court "made it clear that the refusal instruction should not be given when there is a question of fact with respect to whether or not there was a refusal or whether the refusal was based upon consciousness of guilt." (Appellant's Brief, 27.) The Supreme Court in *Maumee*, however, specifically stated that the approved instruction was appropriate in any situation where an individual refuses to submit to a chemical test, whether the reason for the refusal be "conditional, unequivocal, or a combination thereof." *Id.* at 344.

{¶ 19} Defendant contends that, "[i]f a court does instruct a jury on refusal evidence, it must do so in a way that allows the jury to make the factual finding of whether or not the defendant refused and whether or not the refusal was an indication of consciousness of guilt." (Appellant's Brief, 30.) The court's instruction, however, did allow the jury to make these factual determinations. The instruction stated that evidence had been introduced "indicating that the defendant was asked but refused" to submit to a breath test, and instructed that "[i]f" the jury found that "defendant refused," they could, but were "not required to," consider such evidence along with all other evidence indicating that defendant was under the influence. (Trial Tr. 183-84.) The jury was free to determine, as the finder of fact, whether defendant refused to submit to the chemical breath test, and whether the refusal was an indication of guilt.

{¶ 20} Defendant asserts the "reason the test was not administered was not because of the defendant's refusal but because of the officer's refusal to allow the defendant to take the test after this change of mind." (Appellant's Brief, 27.) We disagree. *See* R.C. 4511.192(A) (requiring a mandatory suspension of an individual's driver's license if they refuse to submit to a chemical breath test to determine their

BAC); *In Re Brooks*, 27 Ohio St.2d 66, 70 (1971), at paragraph two of the syllabus (holding that an automatic license suspension "is not precluded by the fact that after such refusal but within two hours of the alleged driving violation, the motorist stated that he would submit to the test," and noting that a retraction must occur "almost immediately" for the retraction to be valid); *Carroll v. McCullion*, 10th Dist. No. 91AP-340 (Aug. 8, 1991) (retraction within 15 to 20 minutes of refusal not immediate); *Bowman v. McCullion*, 21 Ohio App.3d 138, 139 (9th Dist.1985) (retraction within 5 minutes of refusal not immediate). The jury heard all of the evidence regarding defendant's retraction of his initial refusal. The court's instruction permitted the jury to determine, as the finder of fact, whether defendant refused to take the test.

{¶ 21} The trial court provided the jury with a legally correct refusal instruction, and the instruction allowed the jury, as the ultimate finder of fact, to determine whether or not defendant refused to submit to a chemical test of his breath. Because the court's instruction was a correct statement of the law, the trial court did not abuse its discretion in instructing the jury. Furthermore, the instruction did not amount to prejudicial error.

{¶ 22} Based on the foregoing, defendant's first assignment of error is overruled.

## III. SECOND ASSIGNMENT OF ERROR – REASONABLE SUSPICION

{¶ 23} In his second assignment of error, defendant contends that Officer Rogers' observation of a moderate odor of alcohol, bloodshot, glassy eyes, and defendant's admission to drinking one to two beers, was insufficient, in the absence of any evidence of erratic driving, to provide the officer with reasonable, articulable suspicion to support the FSTs. In ruling on defendant's motion to suppress, the trial court found that Officer Rogers had the requisite suspicion to perform the FSTs.

{¶ 24} "[A]ppellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact." *State v. Vest,* 4th Dist. No. 00CA2576 (May 29, 2001). Thus, an appellate court's standard of review of the motion to suppress is two-fold. *State v. Reedy,* 10th Dist. No. 05AP-501, 2006-Ohio-1212, ¶ 5, citing *State v. Lloyd,* 126 Ohio App.3d 95, 100-01 (7th Dist.1998). When considering a motion to suppress, the trial court assumes the role of trier of fact, and therefore is in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. As a result, an appellate

court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Then, the appellate court must independently determine whether the facts satisfy the applicable legal standard, pursuant to a de novo review and without giving deference to the conclusion of the trial court. *Id.*

{¶ 25} "[E]ven where an officer has probable cause to stop a defendant for committing a traffic violation, the officer's further detention of the defendant in order to conduct field sobriety tests violates the Fourth Amendment unless the officer has reasonable, articulable suspicion that the defendant is intoxicated." *State v. Mossman*, 10th Dist. No. 13AP-959, 2014-Ohio-2620, ¶ 10, citing *State v. Montelauro*, 10th Dist. No. 11AP-413, 2011-Ohio-6568, ¶ 8. "The propriety of such an investigative stop must be viewed in light of the totality of the circumstances." *Montelauro* at ¶ 8, citing *United States v. Cortez*, 449 U.S. 411 (1981) and *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus.

{¶ 26} This court has held that an officer has the requisite reasonable suspicion to conduct FSTs when a traffic violation is coupled with some indicia of intoxication, such as a more-than-slight odor of alcohol; a driver's red, glassy, watery, or bloodshot eyes; the time of the stop (i.e., late night or early morning hours); and the admission to consuming alcohol. *See Columbus v. Shepherd*, 10th Dist. No. 10AP-483, 2011-Ohio-3302, ¶ 4-5, 38 (noting that speeding, coupled with moderate odor of alcohol, slightly slurred speech, difficulty in locating insurance card, and a bar ID stamp on the back of defendant's hand, provided the officer with "sufficient indicia of intoxication to establish reasonable suspicion to administer field testing"); *Mossman* at ¶ 13 (finding that the totality of the circumstances justified the officer's reasonable suspicion that the defendant was driving impaired, as the defendant was "driving well in excess of the 35-milesper-hour limit, the trooper stopped her at approximately 2 a.m. on a Sunday morning, the trooper discerned an odor of alcohol in the vehicle, and appellee acknowledged having been drinking"); *State v. Perkins*, 10th Dist. No. 07AP-924, 2008-Ohio-5060, ¶ 11 (finding that officer possessed reasonable suspicion to support the FSTs, where defendant was speeding, "weaving within his own lane after turning against a red light where there was a posted 'no turn on red' sign," and the officer observed a strong odor of alcohol, as well as bloodshot, glassy eyes).

{¶ 27} In *Montelauro,* this court found that the officer possessed the requisite reasonable suspicion to conduct FSTs, as the officer "noted an obvious odor of alcohol," the defendant "admi[tted] to drinking Long Island Iced Tea, * * * the officer knew drinks were half price that night," and the defendant "had glassy, bloodshot eyes." *Montelauro* at ¶ 19. Notably, we found that the officer in *Montelauro* possessed the requisite reasonable suspicion, despite the fact that the officer specifically testified that defendant "was not driving erratically at the time the officer stopped him, did not have slurred speech, was not disheveled or inappropriate in appearance, pulled over almost immediately, and did not fumble with his license." *Id.* at ¶ 13.

{¶ 28} In the instant case, it is uncontested that Officer Rogers observed defendant perform a U-turn in the middle of High Street at 3:00 A.M., directly in front of Officer Rogers' marked cruiser. Officer Rodgers also observed other indicia of intoxication, including a moderate odor of alcohol, bloodshot, glassy eyes, and defendant admitted to consuming alcohol. Accordingly, based on the foregoing authority, Officer Rogers had reasonable, articulable suspicion of intoxication to conduct the FSTs. Defendant's reliance on non-binding cases, including *State v. Derov*, 7th Dist. No. 07 MA 71, 2009-Ohio-5513 and *State v. Spillers*, 2d Dist. No. 1504 (Mar. 24, 2000), is unpersuasive in light of the foregoing authorities.

{¶ 29} Defendant also asserts that Officer Rogers admitted that he did not have reasonable suspicion that defendant was intoxicated. This argument lacks merit. On cross-examination, defense counsel asked Officer Rogers, hypothetically, if defendant had refused to take the FSTs, whether Officer Rogers would have arrested defendant at that point in time. Officer Rogers stated that he "hadn't come to any conclusion at that time," and further stated that he didn't think he "had reasonable -- even reasonable suspicion, let alone probable cause at that point" to arrest the defendant. (Trial Tr. 73.) Thus, Officer Rogers' statement regarding the lack of reasonable suspicion related to his ability to arrest defendant prior to the FSTs, and not to the reasonableness of Officer Rogers' suspicion that defendant was intoxicated.

{¶ 30} Based on the foregoing, we find that Officer Rogers had reasonable, articulable suspicion that defendant was intoxicated, sufficient to support the further detention of defendant to conduct the FSTs. As such, the trial court did not err in

denying defendant's motion to suppress. Defendant's second assignment of error is overruled.

## IV. DISPOSITION

{¶ 31} Having overruled defendant's first and second assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

DORRIAN and BRUNNER, JJ., concur.

_____