OPINION
{¶ 1} Defendant-appellant Roy Percy appeals the decision of Mahoning County Court No. 3, which denied his motion to suppress. The issues on appeal are whether the officer effected a stop by turning on his overhead lights after appellant had already pulled to the side of the road, and if so, whether there existed reasonable suspicion for that traffic stop. For the following reasons, the judgment of the trial court is affirmed because the trial court could properly determine that there was no official stop of appellant's vehicle.
 STATEMENT OF THE FACTS {¶ 2} Just before three o'clock in the morning on February 22, 2004, a Smith Township police officer was driving westbound on State Route 62 when he clocked appellant's vehicle approaching him driving only thirty-two miles per hour in a fifty-five mile per hour zone. (Tr. 5, 8). The officer turned around and followed appellant's vehicle in order to observe his driving further. (Tr. 5). Upon following him, the officer had to drive at greatly reduced speeds due to appellant's slow-moving vehicle. (Tr. 7).
 {¶ 3} Appellant then pulled to the right side of the road and stopped his vehicle. The officer stopped behind appellant and activated his lights to determine if something was wrong. (Tr. 6). The officer discovered that appellant's license was suspended. (Tr. 8). The officer also noticed the smell of alcohol on appellant's breath, and appellant stated that he drank one "tall boy." (Tr. 8-9).
 {¶ 4} The officer asked appellant to perform three field sobriety tests. Upon evaluating appellant's performance on the horizontal gaze nystagmus test, the walk-and-turn test and the one-leg stand test, the officer determined that appellant had been driving while under the influence of alcohol. (Tr. 12-16). A breath test later revealed a blood alcohol content of .141.
 {¶ 5} Appellant was charged with operating a motor vehicle while under the influence in violation of R.C. 4511.19(A)(1) and (A)(4), driving under suspension in violation of R.C.4510.11(C)(1), and driving at a slow speed in violation of R.C.4511.22. The slow speed statute provides in part:
 {¶ 6} "No person shall stop or operate a vehicle, trackless trolley, or street car at such a slow speed as to impede or block the normal and reasonable movement of traffic, except when stopping or reduced speed is necessary for safe operation or to comply with law." R.C. 4511.22(A).
 {¶ 7} Appellant filed a motion to suppress arguing that there was no probable cause for the traffic stop. (As will be explained infra, probable cause is not the proper inquiry at the stop stage). Appellant solely argued that the initial stop was improper because there was no evidence that he impeded or blocked the normal and reasonable movement of traffic by his slow speed and thus he did not violate R.C. 4511.22(A).
 {¶ 8} A suppression hearing was held where the officer testified to the facts set forth supra. On July 13, 2004, the trial court denied the suppression motion. The court found that there was no official stop because appellant stopped on his own accord and that the officer became aware of the evidence now requested to be suppressed only after he investigated why appellant voluntarily stopped on the side of the road.
 {¶ 9} On October 26, 2004, appellant pled no contest to operating a motor vehicle while under the influence in violation of R.C. 4511.19(A)(1). He was sentenced to thirty days in jail, but the court suspended twenty-seven days and permitted the remaining three days to be served in the jail alternative class. In return for his plea, the state dismissed the remaining charges. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR {¶ 10} Appellant's sole assignment of error provides:
 {¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY OVERRULING HIS MOTION TO SUPPRESS EVIDENCE."
 {¶ 12} First, appellant argues that an official stop occurred at the moment the officer pulled behind appellant's vehicle or at least when he activated his lights. He believes the officer's intent is important and claims that the officer subjectively intended to arrest appellant from the first time he noticed the vehicle.
 {¶ 13} Next, appellant contends that the stop was not reasonable because slow speed did not establish sufficient grounds for investigation where appellant did not block the normal or reasonable flow of traffic. He posits that only the police officer was on the road and the officer did not have to drive behind him.
 {¶ 14} The state counters that the encounter was consensual because appellant pulled over prior to the officer's activation of his lights. The state concludes that the Fourth Amendment is not triggered by such an encounter.
 STANDARD OF REVIEW {¶ 15} In reviewing a suppression decision, this court generally accepts the trial court's factual findings as true. Weight of the evidence and credibility determinations are primarily the province of the trier of fact. See, e.g., State v.Brooks (1996), 75 Ohio St.3d 148, 154; State v. Mills (1992),62 Ohio St.3d 357, 366. Accepting those facts as true, we then determine the application of the correct law to the facts by conducting a de novo review. State v. O'Neill (2000),140 Ohio App.3d 48, 57 (7th Dist.).
 LAW {¶ 16} Before stopping a vehicle to investigate suspected criminal activity by its occupants, a police officer must have reasonable suspicion that a crime, including a traffic violation, is being or has been committed. See Terry v. Ohio (1968),392 U.S. 1. Reasonable suspicion evaluations consider the totality of the facts and circumstances. United States v. Cortez (1981),449 U.S. 411, 417. Reasonable suspicion is based upon specific and articulable facts and the reasonable inferences that can rationally be drawn therefrom.
 {¶ 17} Observing a traffic violation is more than reasonable suspicion; it is probable cause. See Terry, 392 U.S. 1
(reasonable suspicion that a crime is about to be committed where defendant merely observed hovering on street corner, pausing to stare in same store window and conferring). The justification for a mere investigatory stop need not rise to the level of probable cause. Thus, if an officer observes a traffic violation, such as a violation of the slow speed statute, an investigatory stop is more than valid. Dayton v. Erikson (1996), 76 Ohio St.3d 3, 9.
 {¶ 18} However, the Fourth Amendment is not implicated in every encounter between law enforcement and citizens. UnitedStates v. Mendenhall (1980), 446 U.S. 544, 553. An officer, without even reasonable suspicion of illegal activity, may approach a citizen if the officer does not detain him by force or show of authority. See Terry, 293 U.S. at 19, fn.16 (noting that not all personal intercourse between policemen and citizens involves seizure). For instance, an officer may approach an individual in a public place and ask if he is willing to answer questions or to listen. Florida v. Royer (1983), 460 U.S. 491,501. And, asking for a driver's license in such situation is permissible. Id.
 {¶ 19} Furthermore, in fulfilling his role as a public servant and maintainer of roadway safety, an officer may stop and assist stranded motorists. See Cady v. Dombrowski (1973),413 U.S. 433. An officer need not have reasonable suspicion of any legal violation to stop his vehicle behind a car parked on the side of the road and determine if the occupants are in need of assistance, whether that assistance be in the nature of the use of a telephone, help with a flat tire, a ride to a gas station or directions. This has been described as a "community caretaking function." See, e.g., State v. Norman (1999),136 Ohio App.3d 46, 54 (3d Dist.) (finding officer had reasonable safety concerns to approach stopped vehicle). See, also, State v. Bartimus, 7th Dist. No. 02BA23, 2003-Ohio-808, at ¶ 13.
 {¶ 20} Specifically, it has been held reasonable to approach a car's occupants where a car is parked on the side of the road by a cornfield at two o'clock in the morning to see if assistance is needed. State v. Thayer (Aug. 31, 1990), 4th Dist. No. 2667. Also, where an officer stops to ask a motorist at a public telephone if he has been in an accident and then notices indicia of intoxication, there was no stop for purposes of the suppression motion and no detention until after the intoxication signals were discovered. City of North Royalton v. Smyth (May 15, 1999), 8th Dist. No. 74029. See, also, State v. Bennett
(June 21, 2000), 4th Dist. No. 99CA2509 (approaching parked vehicle and examining license not seizure).
 {¶ 21} Additionally, it is not a seizure to stop behind a car with lights activated to offer assistance where an officer sees the car pull in a drive, exit the drive in the same direction it was traveling, stop in another drive, alight from the vehicle and open the trunk and hood. State v. Smith (Oct. 16, 1995), 12th Dist. No. CA95-03-009 (also holding it is well-established that no seizure occurs when an officer asks to see identification), citing Florida v. Bostick (1991), 501 U.SD. 429; WarrensvilleHeights v. Mollick (1992), 79 Ohio App.3d 494, 497 (consensual encounter where officer approaches person outside stopped vehicle and requests identification).
 {¶ 22} The mere fact that an officer activates his lights after pulling over behind a vehicle parked on the side of the road does not turn a consensual encounter into a traffic stop or a detention. State v. Smith (Oct. 15, 1995), 12th Dist. No. CA95-03-009. The use of overhead lights in a situation where the driver has already voluntarily pulled over is a standard procedural safety feature meant to ensure oncoming vehicles do not crash into the officer or the stranded motorist and to assure the stranded motorist that a valid police officer and not some stranger is approaching his vehicle.
 {¶ 23} Finally, the officer's initial intent to follow appellant and keep an eye on his driving is irrelevant to the fact that appellant stopped on his own accord. See Dayton,76 Ohio St.3d at 6 (relevant consideration is only objective facts, not officer's subjective state of mind).
 {¶ 24} Here, appellant was driving twenty-three miles under the speed limit at three o'clock in the morning. He continued to drive this slow even with a vehicle behind him. Appellant pulled over voluntarily and parked on the side of a dark wooded road. The officer then activated his lights thereafter and approached appellant's vehicle to determine if assistance was needed. The trial court found the officer's claims credible. Contrary to appellant's arguments, these actions did not constitute a seizure for purposes of the Fourth Amendment as a matter of law.
 {¶ 25} In conclusion, the driver voluntarily stopped and caused the officer to believe that assistance was needed. Because there was no stop and seizure at the point of initial encounter, we need not evaluate whether the officer had reasonable suspicion to stop appellant's vehicle for a violation of the slow speed statutes. (We note that the slow speed charge was dismissed in the plea, along with the driving under suspension charge.)
 {¶ 26} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.