[Cite as *State v. Bahen*, 2016-Ohio-7012.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-65 |
| v. | : | (M.C. No. 2015 TRC 149014) |
| Gregory T. Bahen, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 27, 2016

**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, and *Melanie R. Tobias*, for appellee. **Argued:** *Melanie R. Tobias*.

**On brief:** *Jessica G. D'Varga*, for appellant. **Argued:** *Jessica G. D'Varga*.

APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1} Defendant-appellant, Gregory T. Bahen, appeals from a sentencing entry of the Franklin County Municipal Court following appellant's plea of no contest for operating a vehicle under the influence of alcohol ("OVI") and traffic violations, and from a motion hearing entry determining issues of reasonable suspicion, probable cause, and suppression of various field sobriety tests. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On July 9, 2015 at 12:39 a.m., appellant was charged with OVI-impaired, pursuant to R.C. 4511.19(A)(1)(a), OVI-per se, pursuant to R.C. 4511.19(A)(1)(d), a driving in marked lanes violation, pursuant to R.C. 4511.33, and slow speed pursuant to R.C. 4511.22. Appellant entered a plea of not guilty to the charges.

{¶ 3}   On August 7, 2015, appellant filed a motion challenging the officer's reasonable suspicion for the initial traffic stop and probable cause for the arrest and seeking suppression of various field sobriety tests.  The trial court held a hearing on the motion on December 15, 2015.  The parties made several stipulations, including the police cruiser was marked and the cruiser video of the incident was a fair and accurate representation of events.  Deputy Vincent DeRose, a patrol officer with the Franklin County Sheriff's Office, then testified on behalf of appellee.

{¶ 4}   DeRose testified that on July 9, 2015 at about 12:35 a.m., he drove north on Interstate 315 in order to deliver a civil protection order.  DeRose travelled at a speed of approximately 65 miles per hour.  A car drew his attention by passing him in the right lane "very fast."  (Tr. at 9.)  After the car passed him, it started to slow down and then swerved.  Although DeRose was not 100 percent sure, he believed the car "swerved to the left and came back."  (Tr. at 11.)  When DeRose pulled behind the car, it "slowed way down," requiring DeRose to hit his breaks fast to avoid rear-ending the car.  (Tr. at 12.)  In DeRose's opinion, the slow speed of the car was unreasonable for that part of the highway.  With DeRose behind him, the car swerved again "to the left, hit marked lanes again."  (Tr. at 11.)  At that point, DeRose turned on his cruiser lights.  DeRose generally agreed that appellant went over a marked line.

{¶ 5}   The car pulled over without incident.  Appellant occupied the driver's seat and one female occupied the passenger seat.  On his initial approach of the passenger side of the car, DeRose testified that he noticed an open can of an alcoholic beverage or beer named "Four Loko" in the console.  (Tr. at 14.)  When he put his head toward the window, he smelled a "very strong" odor of alcohol.  (Tr. at 15.)  The female passenger said she was the only one drinking alcohol.  DeRose went to the driver's side of the car and noticed one or two more beer cans on appellant's side of the floor.  According to DeRose, appellant slurred, had a strong smell of alcohol, and had glassy, bloodshot eyes.  He could not remember whether appellant admitted to drinking alcohol.  DeRose asked appellant to exit his vehicle in order to perform field sobriety tests.

{¶ 6}   Once out of the car, DeRose asked appellant to perform the horizontal gaze nystagmus ("HGN") test, the vertical gaze nystagmus ("VGN") test, the walk-and-turn test, and the one-leg-stand test.  Before administering the tests, DeRose confirmed that

appellant did not have any physical or medical issues.  His partner turned off the cruiser's front facing flashing lights.

{¶ 7}   With regard to the HGN test, DeRose testified that he placed appellant in a flat, dry, well-lit area and confirmed that his eyes tracked equally and did not show resting nystagmus.  For the "smooth pursuit" portion of the test, DeRose held a pen twelve inches away from appellant's face and, on a two-second count, slowly moved the pen out to appellant's shoulders and back two times in order to look for involuntary twitches in each eye.  (Tr. at 18.)  For the "maximum deviation" portion of the test, DeRose started with the pen at appellant's nose and moved the pen to "slowly go out past his shoulders until my arm is completely locked out," at which point he held the pen stationary at least four seconds, but "usually * * * between 6 and 12 seconds," before testing the other side and repeating the test a second time.  (Tr. at 19.)  For the "onset prior to 45 [degrees]" portion of the test, DeRose returned his pen back to the starting position, then moved the pen slowly to appellant's shoulders two times.  (Tr. at 19.)  Each time appellant's eyes would twitch, DeRose would stop and hold the pen stationary for at least four seconds.  In total, DeRose testified that he observed appellant exhibit six out of six clues on the HGN test.

{¶ 8}   With regard to the VGN test, DeRose testified that he again started the test by holding his pen at appellant's nose and then lifted the pen vertically above appellant's head, held it stationary for four seconds, and observed appellant's eyes for twitching.  According to DeRose, he did observe vertical gaze nystagmus and, while he conducted the test, smelled a strong odor of alcohol coming from appellant's breath.

{¶ 9}   DeRose then administered the walk-and-turn test in front of the cruiser, which was a level, dry, and well-lit area.  DeRose began by demonstrating the test and instructing appellant on how to conduct the test. According to DeRose, appellant exhibited two clues during the walk-and-turn test, including an improper turn and raising his arms above six inches.  DeRose could not remember how many clues are necessary to indicate a blood alcohol level over the legal limit.

{¶ 10} After the walk-and-turn test, DeRose administered the one-leg-stand test. DeRose described the one-leg-stand test as requiring appellant to stand with hands at his sides, lifting either leg parallel to the ground, and counting during a thirty-second period

until instructed to stop. According to DeRose, appellant exhibited four out of four clues on the one-leg-stand test.

{¶ 11} At that point, DeRose decided to arrest appellant for OVI-impaired driving. According to DeRose, his decision to arrest was based on the traffic violation, the odor, the beer can in the console, the appearance of appellant's eyes, and the results of the field sobriety tests. DeRose filled out a "BMV 2255" and explained the consequences of refusing a test of the BMV 2255, and appellant refused to sign the form.[1] (Tr. at 28.)

{¶ 12} On cross-examination regarding the marked lanes violation, DeRose testified that "I think he swerved within his lane, and then he touched that left line" maybe once or twice. (Tr. at 37.) Regarding the slow speed violation, DeRose testified that it was possible that the reason appellant slowed down was because he saw DeRose behind him from his rearview mirror. DeRose further testified that he should have kept the open beer can from the console as evidence and agreed that he did not include in his report information about the two cans on the driver's side floor or appellant's bloodshot and glassy eyes or slurred speech.

{¶ 13} DeRose additionally testified on cross-examination that on the second part of the HGN test, he knew he reached maximum deviation when his arm "locks out" and he cannot go farther. (Tr. at 45.) For the third part of the HGN test, he agreed that after viewing nystagmus, he did not hold the pen to confirm its presence and, therefore, did not follow the instruction of the training manual. Regarding the walk-and-turn test, DeRose testified that although he did not expressly say so on direct examination, he "probably verbally" told appellant to keep his arms down at his side during the whole test and that the video shows him telling appellant to put his arms down. (Tr. at 49.) DeRose identified that two clues are necessary on the walk-and-turn test to indicate a blood alcohol level over the legal limit.

{¶ 14} On redirect examination, DeRose testified that appellant "hit the brakes" and decelerated suddenly prior to him activating his cruiser lights or otherwise signaling for him to stop. (Tr. at 53.) DeRose agreed that the "blind curve" where appellant decelerated made operating a vehicle slowly "more dangerous." (Tr. at 53.) Viewing the

---

[1] A "U-10" police report referenced by appellant is not a part of the record on appeal.

police cruiser video, DeRose testified that he believed appellant's car tires went over the white marked line at the 35:30 mark of the video. Regarding this point, on re-cross, DeRose testified:

> He touched the line right before I let him up, and then right there he crossed on.
>
> * * *
>
> I don't know if he was fully, completely over, but he definitely was on —
>
> * * *
>
> — and mostly over. I mean, it's hard to tell from this ICOP, which — When you're driving, you see better. You know, this is more of a — the view is not as good as when you're actually there. But you can see there where his tire is over the line. I couldn't tell you hundred percent if he was on the other side, but you can see that he's well over the line.

 (Tr. at 55.)

{¶ 15} Appellee submitted without objection the police cruiser video, the NHTSA Manual, and the BMV 2255 form as exhibits to the trial court. On the BMV 2255 form, DeRose indicates that his "reasonable grounds for OVI * * * arrest before test were: [s]werving in and out of lanes, rapid slow speed, strong odor of alcoholic beverage." (State's Ex. No. 3, BMV 2255 Form at 1.) Both parties rested.

{¶ 16} On January 5, 2016, the trial court denied appellant's motion to suppress. In doing so, the trial court found that, despite DeRose's "confusing" testimony regarding where appellant's car crossed a marked line and redirect testimony that cars are supposed to slow down when cruiser lights are activated, "[appellant's] driving was sufficient to constitute reasonable suspicion for the stop." (Jan. 5, 2016 Mot. Hearing Entry at 2.) Furthermore, the trial court concluded that DeRose was authorized to request appellant to submit to field sobriety testing based on "indicia that alcohol may have affected [appellant's] driving," specifically appellant's car touching the left lane line twice and driving on the fog line, his slurred speech and bloodshot eyes, the strong odor of alcohol, and the presence of a beer in the car. (Jan. 5, 2016 Mot. Hearing Entry at 3.) The trial

court found all aspects of the HGN test to be inadmissible at trial, the video and testimony on the walk-and-turn test to be admissible subject to the limitation that DeRose should not be permitted to testify regarding how many clues must be present to predict certain blood alcohol content, and all aspects of the one-leg-stand test to be admissible. The trial court concluded that appellant's performance on the field sobriety tests, the sustained odor of alcohol, and previously indicated indicia of OVI supported the conclusion that probable cause existed for appellant's arrest.

{¶ 17} Following the trial court's decision on the motion, appellant entered a plea of no contest to all charges. Appellant filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Appellant assigns the following as error:

> 1. The trial court erred in finding that there was reasonable suspicion to stop [appellant].
>
> 2. The trial court erred in finding that probable cause existed to place [appellant] under arrest for OVI.

## III. STANDARD OF REVIEW

{¶ 19} "[A]ppellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, ¶ 7, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.

*Burnside* at ¶ 8.

## IV. DISCUSSION

### A. Reasonable Suspicion For the Stop

{¶ 20} Under his first assignment of error, appellant contends that DeRose did not have a reasonable suspicion to stop appellant's car, and, therefore, the ensuing investigation and arrest that followed the stop violated appellant's right against unconstitutional searches and seizures. We disagree.

{¶ 21} In *State v. Smith*, 10th Dist. No. 13AP-592, 2014-Ohio-712, *discretionary appeal not allowed*, 140 Ohio St.3d 1452, 2014-Ohio-4414, this court set forth the appropriate analytical framework as follows:

> It is well-established that stopping an automobile, thus temporarily detaining its occupants, constitutes a seizure under the Fourth Amendment to the U.S. Constitution. *State v. Dorsey*, 10th Dist. No. 04AP-737, 2005-Ohio-2334, ¶ 17, citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). A traffic stop is constitutionally valid, however, if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime, including a traffic violation. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7, 894 N.E.2d 1204, citing *Prouse* at 663; *State v. McCandlish*, 10th Dist. No. 11AP-913, 2012-Ohio-3765, ¶ 10 (observation of traffic violation is enough for reasonable and articulable suspicion to stop car); *State v. Barker*, 10th Dist. No. 11AP-170, 2011-Ohio-5769, ¶ 12-13. "Reasonable suspicion entails some minimal level of objective justification, 'that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' " *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 17, 936 N.E.2d 529 (10th Dist.), quoting *State v. Jones*, 70 Ohio App.3d 554, 556-57, 591 N.E.2d 810, 8 Anderson's Ohio App. Cas. 48 (2d Dist.1990). In evaluating reasonable suspicion to support the propriety of a traffic stop, a reviewing court must consider the totality of the circumstances surrounding the stop as " 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' " *McCandlish* at ¶ 7, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

*Id.* at ¶ 10.

{¶ 22} Specifically, appellant argues that DeRose did not have a reasonable suspicion to stop him because his driving "did not violate either [R.C.] 4511.22 or [] 4511.33." (Appellant's Brief at 10.) At the outset, we emphasize that our inquiry here is not whether these traffic violations actually occurred. *State v. Hernandez*, 10th Dist. No. 09AP-765, 2010-Ohio-2066, ¶ 15 ("These are two distinct analyses, as an officer must only have a reasonable and articulable suspicion that a violation has occurred to conduct a traffic stop; whether a violation actually occurred is not relevant."); *State v. Holland*, 10th Dist. No. 13AP-790, 2014-Ohio-1964, ¶ 15-18 (finding that although the police cruiser video may not prove beyond a reasonable doubt that a marked lane violation occurred, it nonetheless supported the officer's reasonable suspicion to stop the driver); *State v. Percy*, 7th Dist. No. 04 MA 265, 2006-Ohio-1285, ¶ 17 ("Observing a traffic violation is more than reasonable suspicion; it is probable cause * * *. Thus, if an officer observes a traffic violation, such as a violation of the slow speed statute, an investigatory stop is more than valid."). Rather, the focus of this appeal is whether DeRose, considering the totality of the circumstances, had a reasonable and articulable suspicion to stop appellant.

{¶ 23} Considering this focus, although appellant asserts that his driving did not amount to a traffic violation, we note that, depending on the circumstances, erratic driving that does not amount to a traffic violation may, nonetheless, support an officer's reasonable suspicion to stop a driver. *Dumas v. Registrar, Bur. of Motor Vehicles*, 10th Dist. No. 88AP-765 (May 4, 1989) (erratic driving "provided a reasonable basis to investigate the cause of such driving although it may not have risen to the level of a commission of a traffic offense"). Erratic driving may include weaving, " 'whether within or outside one's lane,' " speeding, unusual braking, and slow speed depending on the circumstances of the case. *State v. Churchill*, 6th Dist. No. WD-05-036, 2006-Ohio-3187, ¶ 9, quoting *Montpelier v. Lyon*, 6th Dist. No. WMS-86-16 (May 1, 1987) (erratic driving included instances of weaving over the white line and applying the breaks for no apparent reason with a police cruiser following). *Findlay v. Jackson*, 3d Dist. No. 5-14-02, 2014-Ohio-5202, ¶ 30, citing *State v. Evans*, 127 Ohio App.3d 56 (11th Dist.1998), fn. 2.

{¶ 24} Appellant's first argument, regarding R.C. 4511.22, essentially asserts that appellant was justified in slowing his vehicle because DeRose pulled "directly behind him

and turned on his lights" and that no traffic on the road was impeded.  (Appellant's Brief at 12.)

{¶ 25} A traffic violation for "slow speed" is set forth in R.C. 4511.22, which states "[n]o person shall stop or operate a vehicle * * * at such an unreasonably slow speed as to impede or block the normal and reasonable movement of traffic, except when stopping or reduced speed is necessary for safe operation or to comply with law."  R.C. 4511.22(A).  Generally, slow speed alone or in combination with a late hour, does not amount to reasonable suspicion for a traffic stop under R.C. 4511.22.  *State v. Bacher*, 1st Dist. No. C-050730, 2007-Ohio-727, ¶ 12-13, *discretionary appeal not allowed*, 114 Ohio St.3d 1480, 2007-Ohio-3699.  Evidence must also show that the slow motorist impeded or blocked traffic.  *Id.* at ¶ 13.

{¶ 26} Whether a police cruiser itself constitutes impeded traffic for the purposes of R.C. 4511.22 is a case-by-case, fact-based determination.  For example, where an officer behind a slow, but otherwise lawful, motorist can safely navigate around that motorist, the officer is generally not considered to be "blocked" or "impeded" under R.C. 4511.22.  *See, e.g.*, *State v. Hagerty*, 11th Dist. No. 2001-P-0083, 2002-Ohio-3379, ¶ 17, 18 (finding officer was not impeded under R.C. 4511.22 where the officer was the only vehicle on the road, he could have safely passed the motorist, and appellant's slow speed did not constitute a safety hazard and was explainable under the circumstances). Conversely, in circumstances where an officer drives directly behind a motorist with the cruiser light bar off, and the motorist decelerates for no apparent reason in a manner requiring the officer to "slow way down," reasonable suspicion under R.C. 4511.22(A) is supported.  *State v. Gutierrez*, 2d Dist. No. 2004-CA-17, 2004-Ohio-7248, ¶ 3, 6-8.  Overall, "an officer's suspicion is reasonable when a driver is traveling well below the speed limit and is engaged in other unusual driving behavior that would suggest intoxication, such as swerving, driving on the shoulder of the road, straddling a lane, crossing the center line, or weaving."  *Bacher* at ¶ 12.

{¶ 27} Here, we first note that appellant's assertion and the trial court's statement of fact that DeRose's activation of his lights "caused [appellant's] vehicle to hit the brakes and rapidly slow down" is not supported by competent, credible evidence.  (Jan. 5, 2016 Mot. Hearing Entry at 2.)   DeRose clearly testified that he pulled behind appellant,

appellant suddenly decelerated, DeRose activated his cruiser light bar, and appellant pulled over. Our review of the cruiser video confirms this order of events. The video shows that the police cruiser pulls behind appellant at a speed of 66 miles per hour and then must quickly slow to 44 miles per hour. (Police Cruiser Video at 35:52-36:14.) After this deceleration, DeRose activates the cruiser's light bar. (Police Cruiser Video at 36:17.) The record does not show that DeRose otherwise indicated an intention to pull appellant over prior to activating his cruiser bar lights. Therefore, to the extent that appellant's argument is based on a theory that appellant slowed his car to comply with being pulled over by a police cruiser, we find the argument to be against the facts.

{¶ 28} Furthermore, we find the facts here more akin to *Gutierrez* than *Hagerty*. DeRose's testimony describes a "sudden deceleration of speed" causing DeRose to "hit [his] breaks fast so [he] didn't rear-end him." (Tr. at 12, 53.) DeRose's testimony additionally establishes that appellant's slow speed occurred on a curve of a highway with poor sightlines, and the video shows that at least two other cars were on the highway behind and in close proximity to appellant and DeRose. These facts render appellant's slow speed a public safety hazard, a factor not present in *Hagerty*. Therefore, under the circumstances of this case, appellant's argument regarding the slow speed violation fails.

{¶ 29} Appellant's second argument specific to a lack of reasonable suspicion for a marked lanes violation, pursuant to R.C. 4511.33, likewise fails. In pertinent part, R.C. 4511.33(A) provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
>
> (1) A vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

{¶ 30} Subject to limited exceptions, "R.C. 4511.33 requires a driver to drive a vehicle entirely within a single lane of traffic." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 16 (finding the traffic stop at issue constitutionally valid where the law-

enforcement officer witnessed a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving).  Therefore, "[w]hen an officer observes a vehicle drifting back-and-forth across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33."  *Id.*  Under Ohio law, drifting across the white fog line supports a reasonable and articulable suspicion that a motorist has violated R.C. 4511.33.  *Id.* at ¶ 19.

{¶ 31} Specifically, appellant argues that Ohio law requires an officer to observe a driver's tire *over* rather than *on* a marked lane to support a reasonable suspicion to stop the driver, that the record here contains conflicting information, and that the video confirms that appellant's tires do not cross any marked line.

{¶ 32} We disagree with appellant's assessment of the video and record.  The trial court's entry statement that DeRose observed appellant drive only "on to the fog line" rather than over the fog line is not supported by competent and credible evidence. (Jan. 5, 2016 Mot. Hearing Entry at 3.)  DeRose did testify that he believed appellant went over a marked line and later specified the 35:30 mark of the cruiser video as demonstrating one such occurrence.  DeRose indicates on the BMV 2255 form that appellant "[s]werv[ed] in *and out* of lanes."  (Emphasis added.)  (State's Ex. No. 3, BMV 2255 Form at 1.)  Importantly, the video at the specified time mark shows the right tires of appellant's car cross over the solid white fog line as he proceeds in the far right lane to pass DeRose and another vehicle.  (Police Cruiser Video at 35:30-35:33.[2])  Appellant stipulated that the video fairly depicts the events.

{¶ 33} Also contrary to appellant's position, DeRose's testimony about appellant swerving left to touch a marked line does not undermine or conflict with his testimony about the right fog line.  In our opinion, the video depicts appellant swerving and nearly, if not fully, crossing over the left line several times in addition to the aforementioned fog line infringement.  (Police Cruiser Video at 36:03, 36:17.)  The facts of this case thus, at least, implicate a marked lanes violation arising from both the left and right lane markers

---

[2] Although appellee stated at oral argument that the car that went over the fog line was not appellant's car, our independent review of the video shows definitively that the car crossing the solid white fog line in the far right lane is the car ultimately stopped by DeRose.

and, therefore, for DeRose to address both is to be expected. Considering all the above, appellant's argument regarding the marked lanes violation lacks merit.

{¶ 34} Moreover, appellant's driving viewed as a whole, including using the right lane to speed past a police cruiser late at night, swerving multiple times, and abruptly slowing his speed, together constitute erratic driving warranting further investigation. *Dumas.*

{¶ 35} Therefore, we conclude that, based on the totality of the circumstances of this case, DeRose had reasonable suspicion to stop appellant's car.

{¶ 36} Accordingly, appellant's first assignment of error is overruled.

**B. Probable Cause to Arrest**

{¶ 37} Under his second assignment of error, appellant contends that DeRose did not have probable cause to arrest appellant. Specifically, appellant submits that the only proper evidence to be considered here, the odor of alcohol and failing the one-leg-stand test, do not create probable cause for appellant's OVI arrest. We disagree.

{¶ 38} For a warrantless arrest to be constitutionally valid, an arresting officer must have probable cause to make the arrest at that time. *State v. Timson*, 38 Ohio St.2d 122, 127 (1974). "To determine whether a police officer had probable cause to arrest an individual for operating a vehicle while under the influence of alcohol, a court looks at whether, at the moment of the arrest, the officer had sufficient information, from a reasonably trustworthy source, of facts and circumstances which were sufficient to lead a prudent person to believe the individual was operating a vehicle under the influence." *Columbus v. Shepherd*, 10th Dist. No. 10AP-483, 2011-Ohio-3302, ¶ 29, *discretionary appeal not allowed*, 130 Ohio St.3d 1439, 2011-Ohio-5883. *See also State v. Homan*, 89 Ohio St.3d 421, 427 (2000), *superseded by statute on other grounds*, *State v. Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251.

{¶ 39} "In determining whether probable cause to arrest existed, a reviewing court should examine the 'totality of the circumstances.' " *Columbus v. Weber*, 10th Dist. No. 06AP-845, 2007-Ohio-5446, ¶ 9, quoting *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). Thus, no one fact is dispositive. For example, an officer may still have probable cause to arrest a driver for OVI without an admission of consuming alcohol. *See, e.g., Weber* at ¶ 2, 26-27. Likewise, "[p]robable cause to arrest does not have to be based, in whole or in

part, upon a suspect's poor performance on one or more field sobriety tests." *Columbus v. Bickis*, 10th Dist. No. 09AP-898, 2010-Ohio-3208, ¶ 21. *See State v. Bulin*, 7th Dist. No. 09 BE 27, 2011-Ohio-3398, ¶ 47. For example, this court has stated:

> In finding that a defendant is under the influence of alcohol, a trial court properly considers the defendant's appearance and behavior, including his ability to perceive, make judgments, coordinate movements, and safely operate a vehicle. *State v. Moine* (1991), 72 Ohio App.3d 584, 586, 595 N.E.2d 524; *Newark v. Lucas* (1988), 40 Ohio St.3d 100, 103-104, 532 N.E.2d 130. Further, an inability to follow traffic signs or laws may indicate impaired driving skills. See *State v. Orihel*, Athens App. No. 01 CA33, 2002 Ohio 411. The lack of coordination is also an indication of being under the influence and that one's ability to operate a motor vehicle is affected. *State v. Littleton*, Fairfield App. No. 01 CA30, 2002 Ohio 2521. In addition, glassy, bloodshot eyes, lack of balance, and a strong odor of alcohol emanating from a person may provide sufficient evidence of intoxication. See *State v. Gray*, Paulding App. No. 11-2000-16, 2001 Ohio 2349. Slurred speech may also be considered evidence of intoxication. *State v. Davis* (Apr. 22, 2002), Jackson App. No. 01CA12. Police observation of a defendant's inability to keep his car in the marked lane may also be considered evidence of impairment. *State v. Stuble* (Aug. 10, 2001), Lake App. No. 2000- L-082, 2001 Ohio App. LEXIS 3530.

*State v. Caldwell*, 10th Dist. No. 02AP-576, 2003-Ohio-271, ¶ 26 (determining that even not considering field sobriety tests, a driver's slurred, thick speech, failure to keep car in marked lane, failure to properly signal, and unsteady and forced gait were sufficient evidence of intoxication).

{¶ 40} Moreover, case law supports probable cause to arrest a driver for OVI-impaired where the fact pattern couples a driver's failure on one field sobriety test with other indicia of impairment such as traffic violations, a strong odor of alcohol, and bloodshot and glassy eyes. *State v. Perkins*, 10th Dist. No. 07AP-924, 2008-Ohio-5060, ¶ 2, 31 (finding failure of HGN test, traffic infractions, strong odor of alcohol, and glassy and bloodshot eyes sufficient to support probable cause to arrest even where driver was alert and cooperative, did not slur speech, and did not admit to drinking); *Weber* at ¶ 2, 26-27 (finding failure of walk-and-turn test, strong odor of alcohol, and glassy and

bloodshot eyes sufficient to support probable cause to arrest even where there were no signs of erratic driving, no slurred speech, no admission to drinking, and driver was cooperative).

{¶ 41} Here, as a preliminary issue, we disagree that our probable cause analysis is confined to evidence of the odor of alcohol and the one-leg-stand test. The trial court's findings of fact establish that, at a late hour, a police officer observed appellant's car speeding past him, swerving several times, and rapidly decelerating. The trial court additionally found that the police officer observed a beer in the car, encountered appellant with slurred speech and glassy and bloodshot eyes, and smelled a strong odor of alcohol. While appellant seems to take issue with us considering DeRose's testimony about the beer can because the officer did not eventually inventory it, appellant does not provide us with, and we do not independently find, authority requiring that we disregard this testimony in considering probable cause. App.R. 16(A)(7) (requiring appellants to support arguments with citation to authority). In addition, the trial court found, and appellant does not dispute, that he failed one properly administered standard field sobriety test. The above findings of fact by the trial court are supported by competent, credible record evidence.

{¶ 42} These facts differentiate the present case from *State v. Reed*, 7th Dist. No. 05 BE 31, 2006-Ohio-7075, and *State v. Gray*, 10th Dist. No. 01AP-1251, 2002-Ohio-4328, two cases appellant cites in support of his probable cause argument. Unlike this case, in *Reed*, the officer did not observe any erratic driving or other indications to correlate a "slight" odor of alcohol, an admission of one or two beers, and glassy, bloodshot eyes late at night with impaired driving. *Id.* at ¶ 12. Likewise, in *Gray*, the officer did not observe the defendant driving erratically, the odor of alcohol was not strong, and the defendant exhibited normal speech and steadiness. *Id.* at ¶ 25. Instead, we find the facts of this case more similar to *Perkins* and *Weber*, discussed above.

{¶ 43} Given the totality of the facts and circumstances surrounding the arrest in this case, which include erratic driving late at night, the strong smell of alcohol on the driver, the driver's glassy and bloodshot eyes, an open beer can in the car, and at least one failed field sobriety test, DeRose had sufficient information to cause a prudent

person to believe appellant was operating a vehicle under the influence.  Therefore, DeRose had probable cause to arrest appellant for OVI-impaired.

{¶ 44} Accordingly, appellant's second assignment of error is overruled.

## V.  CONCLUSION

{¶ 45} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

TYACK, J., concurs.
HORTON, J., concurring in judgment only.

_____