[Cite as *State v. Zehenni*, 2016-Ohio-8233.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                       :

    - vs -                                          :

ANDRE J. ZEHENNI,                           :

    Defendant-Appellant.                  :

CASE NO.   CA2016-03-020

O P I N I O N
12/19/2016

CRIMINAL APPEAL FROM MASON MUNICIPAL COURT
Case No. 15CRB00130

Bethany Bennett, Mason Municipal Court Prosecutor, 5950 Mason-Montgomery Road, Mason, Ohio 45040, for appellee

Albert Giuliani and Joseph Morse, 323 West Lakeside, Suite 300, Cleveland, Ohio 44113, for appellant

Nicholas Graman and Charles Rittgers, 12 East Warren Street, Lebanon, Ohio 45036, for appellant

**M. POWELL, P.J.**

{¶ 1}   Defendant-appellant, Andre Zehenni, appeals his convictions in the Warren County Court of Common Pleas for operating a vehicle under the influence ("OVI") and using a weapon while intoxicated.  Zehenni, driving home from Buffalo Wild Wings ("BW3") on Super Bowl Sunday 2015, rear-ended a vehicle travelling on the same road.  After the

collision, Zehenni stopped momentarily but then continued driving at about ten miles per hour. The other driver followed Zehenni and contacted police.

{¶ 2} Mason Police Officer Slone responded and initiated a traffic stop. Zehenni briefly drove off the road as he was pulling over. Officer Slone approached Zehenni's vehicle and observed that the airbags had deployed. Slone stood behind the driver side door and observed Zehenni's behavior for about 30 seconds before approaching the vehicle window. Slone observed Zehenni turned away from him and "fumbling" for a pack of gum in the vehicle's center console. When Slone knocked on the vehicle window, Zehenni slowly turned away from the center console, assumed a normal driving position, and stared out through the windshield without acknowledging the officer.

{¶ 3} Slone opened the vehicle door and asked Zehenni if he knew he had been in a crash. Zehenni said "yes." Slone then detected the smell of an alcoholic beverage and asked Zehenni if he had been drinking. Zehenni replied, "no." For some time, Zehenni simply replied "no" to every question Slone asked. Zehenni refused to identify himself and also refused to leave the vehicle.

{¶ 4} Slone told Zehenni that if he did not exit the vehicle he would be arrested. Zehenni responded by extending his left arm out of the vehicle and slowly stepping towards Slone, while stating "you know I used to be a cop." Slone took Zehenni by the arm and led him between Zehenni's vehicle and the police cruiser.

{¶ 5} By checking the vehicle's license plate, Slone was aware that Zehenni had a permit to carry a concealed weapon. Slone asked Zehenni whether there was a weapon in the vehicle. Zehenni responded affirmatively and indicated he thought the gun was in the trunk. A second officer who arrived searched the trunk.

{¶ 6} Zehenni moved towards the trunk several times in an apparent effort to help the police locate the gun. Slone repeatedly warned Zehenni to stop moving towards the trunk

and, when he persisted, eventually placed him in handcuffs. Zehenni then recalled that the gun was not in the trunk but in the vehicle's front passenger-side compartment instead. The other officer retrieved Zehenni's loaded revolver, which was holstered and located in a bag on the passenger side floorboard.

{¶ 7} Throughout the stop, Slone continued to detect the smell of an alcoholic beverage coming from Zehenni's breath, which would increase when Zehenni spoke. The officer asked Zehenni to perform the walk-and-turn field sobriety test. Zehenni declined, explaining that he had a broken femur and ankle trauma because of an earlier vehicle accident and did not believe he could perform the test. Zehenni also declined to perform the horizontal gaze nystagmus test, but without providing a reason.

{¶ 8} Slone placed Zehenni under arrest for operating a vehicle while intoxicated, using a weapon while intoxicated, and various traffic violations. Later at the police station, Zehenni refused to submit to the breathalyzer test.

{¶ 9} The city tried Zehenni by jury. Slone and the other officer testified about their observations and interactions with Zehenni. On cross-examination, both officers testified that they did not know if Zehenni's revolver was operable.

{¶ 10} Zehenni testified in his own defense. After he got off work that Sunday, his friend Roberta Frazier invited him to her house. En route, he picked up a bottle of vodka. When he arrived at Frazier's, he made himself a cocktail of orange juice and about a shot of vodka. Zehenni drank about half of this cocktail then he, Frazier, and Frazier's friend, Lianne Harris, made their way to BW3 to watch the second half of the Super Bowl. Zehenni was not feeling well and he drove separate from Frazier and Harris.

{¶ 11} Everyone arrived at BW3. But Zehenni briefly remained in his vehicle to make some work calls. He then entered BW3 and informed his two companions that he was going home because he was not feeling well. Zehenni testified that he had no other alcoholic

drinks before the cocktail and none after.

{¶ 12} Frazier and Harris testified that the only drink that they observed Zehenni drink that night was the cocktail at Frazier's house and that he did not seem impaired. Both also confirmed that he left the bottle of vodka at Frazier's house, where it remained when they returned later that evening.

{¶ 13} Zehenni claimed that the last memory he had before the accident was turning out of the BW3 parking lot. His memory then resumed, somewhat foggily, around the time Officer Slone placed him in the back of the police car. In the accident, Zehenni sustained a broken sternum, which he sought treatment for some time later. Zehenni also sustained a "knot" or "mark" on his head from the accident for which he never sought treatment.

{¶ 14} The jury found Zehenni guilty of OVI and using a weapon while intoxicated. On appeal, Zehenni raises six assignments of error.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE JURY ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHICH WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO FIND DEFENDANT GUILTY.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE JURY ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

{¶ 19} Zehenni argues that his OVI conviction was not supported by sufficient evidence and that the greater weight of the evidence demonstrated that he was not intoxicated but rather sustained a head injury in the traffic accident. Zehenni further argues that his conviction for using a weapon while intoxicated was not supported by sufficient evidence because the city failed to offer evidence that the gun recovered from his vehicle

was operable.

OVI

{¶ 20} Zehenni argues that he only had half of a single alcoholic beverage, that his two witnesses testified that they did not observe him to be impaired, that he did not smell of an alcoholic beverage to his witnesses, and that any indicia of impairment observed by police that evening was consistent with head trauma occurring because of the traffic accident. The city counters that there was ample evidence indicating that Zehenni was impaired, including his own admission that he consumed alcohol, the accident, and his behavior during the traffic stop.

{¶ 21} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, viewed in a light most favorable to the prosecution, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 17. In determining whether a judgment is against the manifest weight of the evidence, an appellate court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Cooper*, 12th Dist. Butler No. CA2010-05-113, 2011-Ohio-1630, ¶ 7. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶ 22} The evidence at trial demonstrated that Zehenni crashed his vehicle into an another vehicle that was traveling in the same direction. The other driver testified that her speed was 35 miles per hour and described the impact as "very hard." Zehenni's airbags

- 5 -

deployed. The front of Zehenni's car sustained substantial damage as did the rear of the other driver's car. Despite the accident and airbag deployment, Zehenni continued to drive at an unusually slow speed.

{¶ 23} Zehenni behaved oddly during the traffic stop and was generally non-compliant in responding to basic questions and commands from the police. Both Slone and the other officer testified that they detected the smell of an alcoholic beverage coming from Zehenni's breath, that his eyes were glassy, and that his movements were slow and deliberate. We find that these facts constitute sufficient evidence to allow the jury to consider whether Zehenni was guilty beyond a reasonable doubt of OVI.

{¶ 24} This court also cannot conclude that the jury lost its way in convicting Zehenni of OVI. The jury clearly rejected Zehenni's claim that he only consumed half of a cocktail that night or was otherwise not impaired from alcohol or drugs. The jury also presumably rejected Zehenni's contention that his behavior and loss of memory was because of an undiagnosed and untreated head injury. With respect to credibility determinations, we defer to the fact-finder. *State v. Andrews*, 12th Dist. Butler No. CA2009-02-052, 2010-Ohio-108, ¶ 46.

{¶ 25} Even if the jury believed Zehenni's witnesses' testimony, it still could have concluded that he was guilty of OVI. Both witnesses testified that they interacted with Zehenni for a relatively short time before the accident occurred. Neither could know for certain whether Zehenni had consumed any other drinks or drugs that day. Finally, while Zehenni's behavior could have been explained by a medical issue, like head trauma, another reasonable interpretation of the evidence is simply that Zehenni was too drunk to drive.

{¶ 26} After carefully reviewing the record, we find that there was sufficient evidence to support Zehenni's conviction for OVI. Further, we do not find that the jury lost its way or created such a manifest miscarriage of justice that his conviction must be reversed. Consequently, the first and second assignments of error, as they relate to Zehenni's OVI

conviction, are overruled.

## Using Weapons While Intoxicated

**{¶ 27}** Zehenni argues that there was insufficient evidence to support his conviction for using weapons while intoxicated because the city failed to submit evidence that the gun found in his vehicle was operable. "Using weapons while intoxicated" under City of Mason Codified Ordinance ("Mason City Code") 549.03 required the city to prove that Zehenni carried a "firearm." The city code defines "firearm" as:

> (1) Any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. FIREARM includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

> (2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

Mason City Code 549.01(i).[1]

**{¶ 28}** Accordingly, the city was required to prove beyond a reasonable doubt the gun's operability. *State v. Murphy*, 49 Ohio St.3d 206, 208-09 (1990). Viewing the evidence in a light most favorable to the prosecution, this court concludes that a rationale jury could not be convinced beyond a reasonable doubt that Zehenni's gun was operable or could be easily rendered so.

**{¶ 29}** Despite the ease at which it could be accomplished, the city failed to offer any direct evidence of operability. Slone and the other officer both confirmed that they did not know if the gun was operable and it appears no one else at the city ever test-fired the gun. Zehenni testified but the city failed to use this opportunity to ask him any questions related to

---

1. Mason City Code 549.01(i) mirrors R.C. 2923.11(B).

the gun's operability.

**{¶ 30}** The evidence on operability was circumstantial and was produced during counsel's examination of other aspects of the case. Zehenni testified that he owned the gun for safety reasons because his work was located in a bad neighborhood. The gun was loaded when recovered by police. The state submitted the gun and its ammunition into evidence. However, the jury was not instructed by the court on the statutory definition of firearm, including its operability element. Therefore, it begs the question to argue that the admission of the gun and ammunition into evidence constitutes evidence of operability, as absent an instruction on operability, the jury would have no occasion to examine the gun to consider whether it was operable.[2] Hence, we do not find that the gun and ammunition themselves may be relied upon as evidence of operability based upon the specific facts of this case.

**{¶ 31}** While circumstantial evidence can be used to prove the operability of a gun, the state's burden is still proof beyond a reasonable doubt. And we cannot find on these facts that any rationale trier of fact could determine, beyond a reasonable doubt, the gun's operability. Other courts have concluded similarly when the state has failed to meet its burden of proof on operability. *In re Arledge*, 4th Dist. Ross No. 95 CA 2164, 1991 WL 511658 (Sept. 4, 1996), *5 ("It would have been a simple matter to either test fire the weapon, or at least to ask the owner about its operability. However, the state did neither"); *see also State v. Boyd*, 6th Dist. Lucas No. L-97-1366, 1998 WL 833534 (Dec. 4, 1998). Accordingly, we find that the city failed to prove an essential element of the crime of using weapons while intoxicated. And we therefore sustain Zehenni's second assignment of error as to the charge of using weapons while intoxicated.

---

2. Zehenni raises this issue in his third assignment of error, which we do not address in light of our reversal here.

- 8 -

{¶ 32} Assignment of Error No. 3:

{¶ 33} APPELLANT WAS DEPRIVED OF DUE PROCESS OF LAW AS A RESULT OF THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON THE DEFINITION OF "FIREARM," AN ESSENTIAL ELEMENT OF THE OFFENSE OF USING WEAPONS WHILE INTOXICATED.

{¶ 34} Zehenni argues that the trial court erred when it failed to instruct the jury on the statutory definition of "firearm" in using weapons while intoxicated under Mason City Code 549.03. This assignment of error is moot based upon our reversal on Zehenni's second assignment of error.

{¶ 35} Assignment of Error No. 4:

{¶ 36} THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING APPELLANT'S MOTION TO SUPPRESS AS THERE WAS INSUFFICIENT PROBABLE CAUSE TO ARREST APPELLANT FOR OVI.

{¶ 37} Before trial, Zehenni moved to suppress all evidence obtained from the traffic stop and the trial court denied the motion after an evidentiary hearing. In this assignment of error, Zehenni argues that Officer Slone did not have probable cause to arrest him for OVI because the only evidence indicating that he was impaired could have been the result of injuries he sustained in the traffic accident. Furthermore, Zehenni argues that the odor of an alcoholic beverage on his breath, coupled with a traffic accident, does not establish probable cause for an OVI arrest.

{¶ 38} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. The trial court, as the factfinder, is in the best position to resolve factual questions and evaluate witness credibility. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by

competent, credible evidence. This court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard. *Id.*

{¶ **39**} An officer must have probable cause to arrest a person without a warrant. *State v. Aslinger*, 12th Dist. Preble No. CA2011-11-014, 2012-Ohio-5436, ¶ 13, citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223 (1964). The test for establishing probable cause to arrest without a warrant is whether the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent individual in believing that the defendant had committed or was committing an offense. A probable cause determination is based upon the totality of the facts and circumstances. *Id.*

{¶ **40**} Zehenni cites *State v. Huening*, 12th Dist. Butler No. CA94-01-017, 1994 WL 506218 (Sept. 19, 1994), for the proposition that a traffic accident, coupled with detecting the odor of an alcoholic beverage does not provide a police officer with probable cause to arrest for OVI. The facts in *Huening* are distinguishable from those here. The defendant in *Huening* was not at fault in the accident and the investigating officer had no knowledge that she was driving erratically or that her driving was impaired in any way. *Id.* at *3.

{¶ **41**} At the suppression hearing, Officer Slone testified that he was aware that Zehenni caused the traffic accident and left the scene of the accident. Slone observed that Zehenni had issues removing his seat belt, displayed unusual behavior during the stop, had an odor of an alcoholic beverage on his breath, had "glassy" eyes, showed elongated motor movements and was "fumbling" to retrieve a pack of chewing gum, presumably to mask the odor of his breath, at the time of the traffic stop. This court finds that these facts and circumstances provided Slone with the requisite probable cause to arrest Zehenni for impaired driving. That there may be an alternate explanation for these occurrences, i.e., injuries from a traffic accident, does not eliminate the existence of probable cause.

Accordingly, the fourth assignment of error is overruled.

{¶ 42} Assignment of Error No. 5:

{¶ 43} THE PROSECUTOR'S MISCONDUCT VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL GURANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶ 44} Zehenni argues that the prosecutor engaged in prosecutorial misconduct during closing arguments. The prosecutor commented that the state believed that Zehenni was lying about his lack of memory before and after the accident. Zehenni argues that this comment prejudiced him because it swayed the jury with respect to his credibility. Zehenni did not object at the time the prosecutor's comments were made, and our standard of review is therefore plain error affecting substantial rights. Crim.R. 52(B).

{¶ 45} The prosecution is entitled to a certain degree of latitude in its concluding remarks. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. A court will find prosecutorial misconduct only when the remarks made during closing were improper and those improper remarks prejudicially affected substantial rights of the defendant. *Id.* The focus of an inquiry into allegations of prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial remarks. *Layne* at ¶ 60.

{¶ 46} It is improper for a prosecutor to attack the credibility of a defendant or a witness in a trial based only upon the prosecutor's personal beliefs and not based on the evidence that was submitted at trial. *State v. Ross*, 135 Ohio App.3d 262, 273 (12th Dist. 1999). While prosecutors should always avoid voicing their personal opinions about the guilt

- 11 -

of the defendant, such statements are not necessarily prejudicial per se. *State v. Stephens*, 24 Ohio St.2d 76, 82 (1970).

{¶ 47} In closing arguments, the prosecutor said the following concerning Zehenni's claim that he could not remember what occurred before and after the traffic accident: "*The State believes that he's completely making up that he has no memory of it, that's what the State believes. . . But it doesn't matter necessarily what I believe, what does matter is what he has testified to is unreasonable.*"

{¶ 48} The remark was made in the context of discussing video evidence that the prosecutor believed contradicted Zehenni's claims that he had no memory of the accident. The choice of words was unfortunate, but placed in its proper context we do not find that the comment was improper. Even if we concluded that the comment was improper, viewing this isolated and brief remark in the context of the entire trial, we would find that Zehenni received a fair trial on the OVI charge. That conviction was supported by the greater weight of the evidence and we do not perceive that this remark could have possibly affected that result. There is no plain error here and the fifth assignment of error is overruled.

{¶ 49} Assignment of Error No. 6:

{¶ 50} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN THAT COUNSEL'S REPRESENTATION WAS PROFESSIONALLY UNREASONABLE, IS PREJUDICIAL TO DEFENDANT, AND FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS.

{¶ 51} Zehenni claims his trial counsel was ineffective for: (1) failing to introduce medical records, (2) failing to retain an expert witness, and (3) failing to object to the lack of a "firearm" definition in the jury instructions. We do not address the third argument because it is moot based on our reversal on the second assignment of error.

{¶ 52} Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14. To prevail on an ineffective assistance of counsel claim, Zehenni must show his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984).

{¶ 53} In order to demonstrate prejudice, Zehenni must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of trial would have been different. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 42. A "reasonable probability" is a probability that is "sufficient to undermine confidence in the outcome." *Strickland* at 694. The failure to make an adequate showing on either prong is fatal to an ineffective assistance of counsel claim. *Kinsworthy* at ¶ 42.

### Failure to Introduce Medical Records

{¶ 54} Zehenni argues that trial counsel was ineffective for failing to introduce certain medical records into evidence, which he claims would have corroborated his defense of having suffered a head injury. The record reflects that Zehenni intended to introduce two sets of medical documents, one from the Warren County Jail a day or so after his arrest, which reflect that he complained to the medical staff about chest pains and a headache, and records from UC Health over a month after the accident, where Zehenni was apparently diagnosed with a broken sternum.

{¶ 55} We do not find that trial counsel's performance fell below a reasonable standard of effectiveness for failing to submit these medical records into evidence. Zehenni testified about his medical complaints at the Warren County Jail as well as his diagnosis at UC Health for the broken sternum. These facts were not controverted by the city.

{¶ 56} The documents would have been simply duplicative of Zehenni's testimony.

Moreover, these documents do not corroborate Zehenni's defense of having suffered significant head trauma, which resulted in his behavior during the traffic stop. At best, the record reflects that Zehenni complained of a headache a day or two after the accident, an ailment for which he never sought treatment. Accordingly, this argument is meritless.

Failure to Present Expert Testimony

**{¶ 57}** Zehenni also argues that trial counsel was ineffective for failing to secure the testimony of a medical doctor who could explain to the jury how an individual in a vehicle accident might exhibit behavior consistent with an intoxicated driver. The decision of whether or not to call an expert witness is a matter of trial strategy. *State v. Coleman*, 45 Ohio St.3d 298, 307-308 (1989). As such, a decision by trial counsel not to call an expert witness generally will not sustain an ineffective assistance of counsel claim. *State v. Nicholas*, 66 Ohio St.3d 431, 436 (1993); *State v. Thompson*, 33 Ohio St.3d 1, 10-11 (1987).

**{¶ 58}** We cannot conclude that trial counsel was ineffective for failing to secure an expert who would testify along the lines suggested by Zehenni. Evid.R. 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." Zehenni did not seek any medical treatment related to his purported head injury. Consequently, no medical expert could offer an opinion based on providing treatment to Zehenni at or around the time of the accident or based upon a review of medical records concerning the claimed head injury. Accordingly, any expert would be limited to the evidence introduced at trial concerning Zehenni's alleged head injuries. That evidence showed that Zehenni was in an accident where an airbag deployed and later complained of a headache. Evid.R. 702 requires that an expert's testimony be based on reliable and scientific information. An opinion rendered by an expert that Zehenni was more likely suffering from a head injury – derived from this limited amount of information – would seem far too speculative to be

admissible. Accordingly, this argument is meritless.

**{¶ 59}** Judgment reversed as to appellant's conviction for using weapons while intoxicated and appellant is hereby discharged on that conviction. In all other respects, the judgment is hereby affirmed.

S. POWELL and PIPER, JJ., concur.