[Cite as *State v. Coleman*, 2017-Ohio-8036.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2017-02-023 |
| | : | O P I N I O N |
| - vs - | | 10/2/2017 |
| | : | |
| TAESHA SCHAMEL COLEMAN, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2016-08-1258


Michael T. Gmoser, Butler County Court of Common Pleas, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Scott N. Blauvelt, 315 South Monument Avenue, Hamilton, Ohio 45011, for defendant-appellant


**RINGLAND, J.**

{¶ 1}  Defendant-appellant, Taesha Coleman, appeals her convictions for having a weapon while under disability, using a weapon while intoxicated, and aggravated menacing. For the reasons discussed below, this court affirms Coleman's convictions.

{¶ 2}  On August 9, 2016, Coleman was at her friend Sky's apartment, located in Fairfield.  At around 10:30 p.m., Sky allowed Coleman to use her vehicle to go to the gas

station. Coleman left the apartment and saw a man she knew named Sean in the parking lot.

{¶ 3} Coleman asked Sean if he would join her. Sean agreed and the two left the apartment complex. Coleman testified that she and Sean intended to find women to "hang out with." Over the course of the evening and into the early morning hours, Coleman and Sean visited the gas station, Coleman's friend's house, an "illegal bar," and Coleman's relatives' houses.

{¶ 4} Sean's girlfriend, Justyn Butler, lived in the same apartment building as Sky. Justyn woke at around 2:00 a.m. on August 10 and realized Sean was not home. Justyn noticed that Sky's car was missing so she texted Sky. Sky did not know Coleman's or Sean's whereabouts. Justyn and Sky waited outside the apartment building for the two to return.

{¶ 5} Coleman and Sean returned to the apartment complex, although Sean got out of the vehicle before they parked so that he would not be seen. Coleman, Justyn, and Sky began arguing. Coleman revealed to Justyn that Sean had been with her. Justyn testified that Coleman was stumbling and intoxicated, repeatedly shouting obscenities, and stated that she was going to "beat [Justyn's] ass" and "beat [Justyn's daughter's] ass." Eventually, Justyn retreated to her apartment.

{¶ 6} Cynthia Butler – Justyn's mother – was listening to the commotion. Justyn told Cynthia what was happening. Justyn then went back outside. Sean appeared and Coleman approached him angrily. Coleman began pushing Sean and posturing as if to fight him. Coleman then began pushing Justyn. Coleman knocked a set of keys out of Justyn's hands.

{¶ 7} Justyn and Sean attempted to enter the main entrance to the apartment building. However, Coleman had her back to the door, blocking the entrance. Cynthia was standing on the opposite side of the entrance door. Coleman then entered the apartment building and ran by Cynthia. Justyn and Sean walked away into the parking lot.

{¶ 8} Cynthia watched as Coleman reappeared holding a gun. Cynthia claimed that

Coleman said, "I'm going to kill those mother*******." Coleman then walked outside and was holding the gun over her head. Cynthia observed Coleman throw some objects, "bullets or whatever." Coleman then laid the gun down in the grass and began "rubbing" the grass. Cynthia asked Coleman what she was doing and she replied, "I don't want no evidence."

{¶ 9} A neighbor also woke up during the dispute. She looked outside and observed Coleman bent over the grass, holding a gun. The neighbor thought Coleman was searching for ammunition.

{¶ 10} Cynthia observed Justyn walking back towards Coleman and began screaming. Justyn heard the warning and saw Coleman waving a gun over her head. Justyn ran and hid in a neighbor's apartment.

{¶ 11} As police arrived, Cynthia watched Coleman place the gun on top of a car's tire. The police arrested Coleman, who was combative. The police had to apply leg restraints after Coleman began attempting to kick out a police cruiser's windows.

{¶ 12} Cynthia told police the location of the firearm, which an officer recovered under a vehicle near the tire. The firearm, a Ruger pistol, was unloaded and the clip was empty.

{¶ 13} An officer later questioned Coleman at the police station. Initially, Coleman denied touching a firearm that morning. An officer asked her if she would be willing to provide a DNA sample that could prove that she did not touch the firearm. Coleman replied, "well I never said I didn't touch the gun. I may have handled it tonight."

{¶ 14} Coleman testified in her own defense at trial. She denied touching or possessing a firearm that morning. She denied telling the police that she handled the firearm. She denied that she was intoxicated, although she admitted having consumed two shots at the illegal bar, several hours earlier. Finally, she explained that she was searching the grass for money. Coleman said that the state's witnesses were lying when they said they saw her with a gun.

{¶ 15}   At trial, the state introduced testimony from Justyn, Cynthia, the neighbor, responding police officers, and a crime laboratory worker who test-fired the Ruger.  Coleman rested after testifying in her case in chief.  A jury convicted Coleman of one count of weapons under disability, a third-degree felony, one count of using weapons while intoxicated, a misdemeanor of the first degree, and one count of aggravated menacing, a misdemeanor of the first degree.[1]

{¶ 16}   Coleman appeals, assigning three errors for our review.  We address Coleman's first two assignments of error together.

{¶ 17}   Assignment of Error No. 1:

{¶ 18}   THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR HAVING WEAPONS WHILE UNDER DISABILITY IN COUNT ONE, AND THE VERDICT ON THIS COUNT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 19}   Assignment of Error No. 2:

{¶ 20}   THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR USING WEAPONS WHILE INTOXICATED IN COUNT TWO, AND THE VERDICT ON THIS COUNT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 21}   Coleman argues that the state failed to submit sufficient evidence that she possessed an operable firearm and therefore insufficient evidence supported her convictions for weapons under disability and using weapons while intoxicated.  Coleman also contends that the state failed to submit sufficient evidence that she was intoxicated.  Finally, Coleman argues that both weapons convictions were against the manifest weight of the evidence.

{¶ 22}   When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if

---

1. Coleman had a previous conviction for felonious assault and was therefore under a legal disability to possess a firearm.

believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34. When evaluating the sufficiency of the evidence, this court must view all evidence in the light most favorable to the state and "defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 23} A manifest weight challenge scrutinizes the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue over another. *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

<u>Evidence of Possession of Operable Firearm</u>

{¶ 24} The jury convicted Coleman of having weapons while under disability, a violation of R.C. 2923.13(A)(2). In pertinent part, that statute provides that: "no person shall knowingly acquire, have, carry, or use any firearm * * * if * * * [t]he person * * * has been

convicted of any felony offense of violence." The jury also convicted Coleman of using a weapon while intoxicated, a violation of R.C. 2923.15(A). That statute provides: "[n]o person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordnance."

**{¶ 25}** The Revised Code defines "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." R.C. 2923.11(B)(1). Accordingly, the state was required to prove beyond a reasonable doubt the gun's operability. *State v. Zehenni*, 12th Dist. Warren No. CA2016-03-020, 2016-Ohio-8233, ¶ 28.

**{¶ 26}** Coleman argues that the state produced insufficient evidence that the Ruger pistol admitted into evidence, which was successfully test-fired by a laboratory technician, was the same firearm located by police at the apartment complex. Coleman also argues that there was insufficient evidence that the firearm admitted at trial was the same firearm that the witnesses on scene observed Coleman holding.

**{¶ 27}** The chain of custody of evidence is part of the authentication and identification requirement of Evid.R. 901. *State v. Stevens*, 12th Dist. Butler No CA2015-09-020, 2017-Ohio-498, ¶ 43. Evid.R. 901(A) provides: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

**{¶ 28}** The state bears the burden of establishing a chain of custody. *Stevens* at *id.* However, the state's burden is not absolute because the prosecution "need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur." *Id.* Any breaks in the chain of custody go to the weight of the evidence. *State v. Brown*, 107 Ohio App.3d 194, 200 (3d Dist.1995).

{¶ 29} Cynthia, Justyn, and the neighbor all testified that they observed Coleman carrying a firearm. Cynthia testified that she watched Coleman place the firearm on top of a vehicle's tire before the police arrived. Coleman was standing approximately 20 to 25 feet from the firearm's location when police arrived. A police officer spoke with Cynthia and then told another officer – Officer Carnes – the approximate location of the firearm. Officer Carnes testified that he found the pistol under a vehicle in the front of the apartment building. Officer Carnes identified the Ruger pistol, state's exhibit 10, as the firearm he recovered. The weapon is somewhat unique in that it has an attached oversized laser sight designed for a rifle. A laboratory supervisor at Miami Valley Regional Crime Lab then identified state's exhibit 10 as the gun he test-fired. Finally, a police sergeant testified that Coleman told her that she may have touched the firearm they confiscated.

{¶ 30} This evidence was sufficient to allow the jury to find beyond a reasonable doubt that state's exhibit 10, an operable Ruger pistol, was the firearm witnesses observed Coleman carrying on the morning of August 10. We further conclude that this evidence demonstrates that the jury did not lose its way in concluding that Coleman possessed the firearm.

Evidence of Intoxication

{¶ 31} Next, Coleman argues that the state submitted insufficient evidence to demonstrate that she was under the influence of alcohol because police did not test her blood or perform a field sobriety test. The Ohio Jury Instructions provide that a defendant is "under the influence" of alcohol when they have consumed or used some alcohol in such quantity that it adversely affected the defendant's actions or mental process to deprive the defendant of that clearness of intellect or control of herself which she would otherwise have possessed. Ohio Jury Instructions, CR Section 523.15. In determining whether a defendant was under the influence of alcohol, the factfinder may properly consider the defendant's

appearance and behavior, including her ability to perceive, make judgments, and coordinate movements. *State v. Moine*, 72 Ohio App.3d 584, 586 (9th Dist. 1991) (in the context of an OVI charge). In addition, glassy, bloodshot eyes, lack of balance, and a strong odor of alcohol emanating from a person may provide sufficient evidence of intoxication. *State v. Bahen*, 10th Dist. Franklin No. 16AP-65, 2016-Ohio-7012, ¶ 39. Slurred speech may also be considered evidence of intoxication. *Id.*

{¶ 32} The first responding police officer testified that he detected the odor of an alcoholic beverage while interacting with Coleman. Her eyes were bloodshot and watery, she was speaking loudly, and she was slurring. Another officer testified that Coleman was agitated, combative, and intoxicated. This officer also smelled the odor of an alcoholic beverage when interacting with Coleman. Justyn described Coleman as "stumbling around, intoxicated." Coleman admitted that she consumed two shots of alcohol earlier that evening, but denied that she was intoxicated.

{¶ 33} This was sufficient evidence from which rational jurors could conclude beyond a reasonable doubt that Coleman was under the influence of alcohol when the state's witnesses observed her carrying a firearm. We further conclude that the jury did not lose its way in finding that Coleman was under the influence. Coleman's belligerent behavior as described by the state's witnesses was consistent with being under the influence of alcohol. Moreover, Coleman admitted to consuming alcohol that evening. This court therefore overrules Coleman's first and second assignments of error.

{¶ 34} Assignment of Error No. 3:

{¶ 35} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR AGGRAVATED MENACING IN COUNT [THREE], AND THE VERDICT ON THIS COUNT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 36} Coleman argues that the state failed to submit sufficient evidence of

aggravated menacing because Coleman's threat to "beat up" Justyn or Justyn's daughter was not a threat to commit serious physical harm. The jury convicted Coleman of aggravated menacing, a violation of R.C. 2903.21(A). That statute provides: "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family." "Serious physical harm" includes:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶ 37} Justyn testified that Coleman threatened to beat her and beat her daughter. Coleman then became physically aggressive with Justyn and Sean, including pushing Justyn and throwing Justyn's apartment keys into the parking lot. Shortly after, Justyn heard her mother screaming for her not to come near because Coleman had a gun. Justyn saw Coleman waving the gun over her head and immediately fled to a neighbor's apartment.

{¶ 38} This was sufficient evidence from which rational jurors could conclude beyond a reasonable doubt that Coleman knowingly caused Justyn to believe that Coleman would cause Justyn serious physical harm, i.e., by discharging a firearm at her. A bullet wound from a firearm is within the ambit of serious physical harm under R.C. 2901.01(A)(5)(b)

through (e). *See, e.g., State v. Barrett,* 12th Dist. Warren No. CA2002-07-069, 2003-Ohio-199, ¶ 7. This court further concludes that Coleman's conviction is supported by the manifest weight of the evidence. The state's witnesses were consistent in their testimony and described Coleman as intoxicated, acting belligerently toward Justyn, and displaying a pistol and announcing her intentions to kill Sean and Justyn. Additionally, Justyn's behavior once she saw the firearm, i.e., running to a neighbor's apartment, would corroborate that she was in fear of suffering serious physical harm. Thus, the greater weight of the evidence support the conclusion that Coleman knowingly caused Justyn to believe that Coleman would shoot her. This court overrules Coleman's third assignment of error.

**{¶ 39}** Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.