[Cite as *State v. Shelton*, 2019-Ohio-4207.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NO. CA2019-01-010 |
| | : | O P I N I O N |
| - vs - | | 10/14/2019 |
| | : | |
| LAUREN B. SHELTON, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2018TRC12593

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellant

Steven R. Adams, 8 West Ninth Street, Cincinnati, Ohio 45202, for appellee

**S. POWELL, J.**

{¶ 1} Appellant, the state of Ohio, appeals the decision of the Clermont County Municipal Court granting a motion to suppress filed by appellee, Lauren B. Shelton, after she was arrested and charged with operating a vehicle while under the influence of alcohol. For the reasons outlined below, we reverse the trial court's decision and remand for further

proceedings.

**Facts and Procedural History**

{¶ 2} On August 28, 2018, Shelton was arrested and charged with failing to maintain an assured clear distance and for operating a vehicle while under the influence of alcohol. The charges arose following an investigation into an automobile accident between Shelton and another driver, R.B. The accident occurred when Shelton struck R.B.'s vehicle from the rear while R.B. was stopped at a red light. The investigation into the accident was conducted by Patrol Officer Cameron Shaw with the Union Township Police Department. Following this investigation, Officer Shaw placed Shelton under arrest. Officer Shaw later submitted a report noting that he had arrested Shelton due to her exhibiting "bloodshot watery eyes" and an "odor of alcoholic beverage" shortly after she was involved in an automobile accident.

{¶ 3} On September 5, 2018, Shelton filed a motion to suppress arguing that her arrest was not supported by probable cause. After holding a hearing on the matter, the trial court agreed and granted Shelton's motion to suppress. In so holding, the trial court determined that Officer Shaw lacked probable cause because Shelton provided Officer Shaw with her driver's license and proof of insurance "without any issues," did not stagger during the course of Officer Shaw's investigation, did not "lose her balance at any point in time during the course of this investigation," and did not have "any slurred speech." The trial court also noted that Shelton "never swayed and had good balance" during the investigation, did not have any "issues of communication" with Officer Shaw, and did not have any problem "entering or exiting her vehicle." The trial court reached this decision despite finding R.B.'s and Officer Shaw's testimony that Shelton exhibited bloodshot, watery eyes, and an "unclassified odor of alcohol" coming from her person "both reasonable and credible."

**Appeal**

{¶ 4} The state appeals the trial court's decision granting Shelton's motion to suppress, raising a single assignment of error for review. In its assignment of error, the state argues that the trial court erred by finding Officer Shaw lacked probable cause to effectuate Shelton's arrest. We agree. Therefore, finding merit to the state's assignment of error raised herein, the trial court's decision granting Shelton's motion to suppress is reversed and this matter is remanded to the trial court for further proceedings.

**Motion to Suppress Standard of Review**

{¶ 5} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. This court is therefore bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

**Probable Cause for a Warrantless Arrest**

{¶ 6} "For a warrantless arrest to be lawful, the arresting officer must have probable cause that the individual had committed an offense." *State v. Watson*, 12th Dist. Warren CA2014-08-110, 2015-Ohio-2321, ¶ 14. "Probable cause is generally defined as a reasonable ground of suspicion supported by facts and circumstances sufficiently strong in

- 3 -

themselves to warrant a prudent person in believing an accused person has committed or was committing an offense." *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 16. "Probable cause to arrest for OVI exists when, at the moment of arrest, the arresting officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, to cause a prudent person to believe the accused was driving under the influence of alcohol." *State v. Way*, 12th Dist. Butler No. CA2008-04-098, 2009-Ohio-96, ¶ 30. A court makes this determination based on the totality of the facts and circumstances surrounding the arrest. *State v. Aslinger*, 12th Dist. Preble No. CA2011-11-014, 2012-Ohio-5436, ¶ 13, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000). A finding of probable cause is therefore objective, not subjective. *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 25.

**Suppression Hearing Testimony**

{¶ 7} Two witnesses testified at the suppression hearing: R.B. and Officer Shaw. R.B. testified that he had stopped at a red light at approximately 6:00 p.m. on August 28, 2018. Shortly after stopping at the red light, R.B. noticed a vehicle approaching him from the rear traveling "faster than normal[.]" Despite its speed, R.B. testified that the vehicle was nevertheless able to stop behind him without incident. A few seconds later, however, the vehicle lurched forward and struck the rear of R.B.'s vehicle causing a "pretty big jolt." There is no dispute that Shelton was the driver of the vehicle that struck R.B. There is also no dispute that there were no adverse weather conditions that could have contributed to the accident between Shelton and R.B..

{¶ 8} Upset that his vehicle had just been struck by Shelton, R.B. got out of his vehicle and told Shelton "I hope you have insurance." R.B. then looked and saw that there was no damage done to either vehicle as a result of the accident. Seeing that there was no harm done to either vehicle, R.B. testified that he "was going to be nice and let her go

because there was no damage." R.B. changed his mind, however, when he "smelled alcohol on [Shelton's] breath" and noticed that Shelton's "eyes were visibly bloodshot" when she "leaned into" him and showed him her driver's license. R.B. testified that he and Shelton were at that time less than one foot apart. Thinking that something may be amiss, R.B. decided to "call somebody to come check this out" so that he could avoid any responsibility if Shelton "cause[d] further damage to somebody else or a human being or something like that."

{¶ 9} R.B. testified that Shelton did not want him to call the police and instead asked him if they could "just go." R.B. refused and instead told Shelton that they "should let the police come and investigate and check this out." R.B. then called the Union Township Police Department to report the accident. After calling the police, R.B. and Shelton moved their vehicles into a nearby gas station parking lot approximately 20 feet away. Because it was a hot, sunny, August day, R.B. decided to wait for the police to arrive in his air conditioned vehicle. Shelton, however, stood outside her vehicle "pacing around" on the hot pavement.

{¶ 10} After pacing around the parking lot, Shelton approached R.B.'s vehicle and "kind of loudly banged" on R.B.'s window again asking if they could "just go?" R.B. responded by stating, "You're an adult, if you want to leave you can leave. But I'm staying." Shelton then returned to her vehicle, put on her sunglasses, "poured some sort of liquid on her hands and rubbed it up and down" her arms "all the way up to her elbows," and moved "a bunch of stuff from her car into a bag in the car." Because this occurred "right before the officer pulled up," R.B. testified that he thought Shelton was acting "strange" and exhibiting "odd behavior."

{¶ 11} Upon Officer Shaw's arrival at the scene, Officer Shaw contacted both R.B. and Shelton. Officer Shaw then asked R.B. and Shelton for their respective driver's

licenses. Already having his license in-hand, R.B. gave his driver's license to Officer Shaw. Shelton, however, had to go back to her vehicle to retrieve her driver's license. Once Shelton stepped away, R.B. informed Officer Shaw that he thought he had "smelled alcohol" on Shelton.[1] To this, Officer Shaw responded that all he smelled was hand sanitizer. After Officer Shaw checked R.B.'s information, Officer Shaw told R.B. that he was free to leave but that he "would be further investigating [Shelton]."

{¶ 12} Similar to R.B.'s testimony, Officer Shaw testified that he was dispatched to an automobile accident involving R.B. and Shelton at approximately 6:00 p.m. on August 28, 2018. Once there, Officer Shaw contacted R.B. and Shelton and retrieved their respective driver's licenses. After receiving their driver's licenses, Officer Shaw moved away from R.B. and spoke to Shelton by her vehicle. During this conversation, Shelton told Officer Shaw that she was in a hurry to pick up her daughter from a volleyball game and had merely "idled into the vehicle in front of her." While speaking with Shelton, Officer Shaw noticed "some type of fragrance, maybe a perfume of some sort" that was both "strong and overwhelming."

{¶ 13} After speaking with Shelton, Officer Shaw then spoke to R.B. by his vehicle. As part of this conversation, R.B. told Officer about the automobile accident between he and Shelton and "of his concern of [Shelton] being intoxicated." Once Officer Shaw was done speaking with R.B., Officer Shaw went back to Shelton. Upon contacting Shelton for a second time, Officer Shaw also detected "the odor of an alcoholic beverage coming from her person." Detecting the odor of an alcoholic beverage on Shelton's person, Officer Shaw asked Shelton to remove her sunglasses. Shelton complied with Officer Shaw's request.

---

1. R.B. later clarified that by using the term "alcohol" that he was actually referring to the distinctive smell of an alcoholic beverage such as beer or wine. R.B. also testified that what he smelled emanating from Shelton's person was different than what hand sanitizer might smell like.

Officer Shaw testified that he then "observed [Shelton's] eyes to be bloodshot and watery."

{¶ 14} Based on his training and experience, Officer Shaw believed Shelton may have been under the influence of alcohol. To test this belief, Officer Shaw asked Shelton if she would be willing to submit to the three standardized field sobriety tests: the horizontal gaze nystagmus ("HGN"), the one-legged-stand, and the walk-and-turn. Shelton responded that she would. Officer Shaw then began to administer the HGN test to Shelton.[2] After administering approximately two-thirds of the HGN test, Shelton refused to allow Officer Shaw to complete the test. Specifically, as Officer Shaw testified, "once we got to the onset prior to 45 degrees she refused all tests." This includes the other two standardized field sobriety tests: the one-legged-stand test and the walk-and-turn test.

{¶ 15} When asked to explain the manner in which Shelton refused any further testing, Officer Shaw testified that Shelton turned back toward her vehicle, opened her vehicle's driver's side door, and stated "she was done." Believing Shelton was "appreciably impaired" by alcohol to the point where she was unfit to operate a vehicle, Officer Shaw testified that he then placed Shelton under arrest. After placing Shelton under arrest, Officer Shaw put Shelton into the back of his cruiser and transported her to jail. Once there, Officer Shaw asked Shelton if she would submit to a blood-alcohol-content test. Shelton, however, refused.

**Analysis**

{¶ 16} After a full and thorough review of the record, we find the trial court erred by finding Officer Shaw lacked probable cause to effectuate Shelton's arrest for operating a

---

2. The HGN test is used to gauge a driver's impairment when observing the driver's involuntary jerking of the eyeball, pupil size, and a lack of smooth pursuit with the individual's eye. The HGN test is considered "'the single most accurate field test to use in determining whether a person is alcohol impaired.'" *State v. Martin*, 4th Dist. Pickaway No. 04CA24, 2005-Ohio-1732, ¶ 6, quoting *State v. Bresson*, 51 Ohio St.3d 123, 125 (1990), citing U.S. Department of Transportation, National Highway Safety Administration, Improved Sobriety Testing (1984).

vehicle while under the influence of alcohol. The testimony at the suppression hearing from both R.B. and Officer Shaw indicated Shelton exhibited bloodshot, watery eyes, and an odor of alcoholic beverages coming from her person. Just like the odor of alcoholic beverages coming from one's person, bloodshot eyes are also "generally accepted as classic indicia of intoxication." *State v. Koogler*, 12th Dist. Preble No. CA2010-04-006, 2010-Ohio-5531, ¶ 16, citing *State v. Lucking*, 12th Dist. Butler No. CA2002-12-303, 2004-Ohio-90, ¶ 11. The same is true as it relates to watery eyes. *See State v. Terry*, 2d Dist. Montgomery No. 27102, 2017-Ohio-2686, ¶ 32 (indicia of intoxication includes "glassy/watery eyes"); *State v. Munye*, 10th Dist. Franklin No. 14AP-744, 2015-Ohio-3362, ¶ 26 ("a driver's red, glassy, watery, or bloodshot eyes" are all indicia of intoxication).

{¶ 17} These observations all occurred shortly after Shelton struck R.B.'s vehicle from the rear while R.B. was stopped at a red light. This too is an indicia of intoxication. *State v. Belmonte*, 10th Dist. Franklin No. 10AP-373, 2011-Ohio-1334, ¶ 11 ("that the defendant caused an automobile accident" is an indicia of the defendant's intoxication); *State v. Tipple*, 5th Dist. Fairfield No. 16 CA 33, 2017-Ohio-2774, ¶ 20 (defendant at fault in causing an automobile accident is an indicia of the defendant's intoxication); *see also Fairfield v. Regner*, 23 Ohio App.3d 79, 84 (12th Dist.1985) ("where a police officer comes to the scene of an accident wherein there was no observable driving but a suspect is found in or near the automobile with an odor of an alcoholic beverage on or about his person, there is probable cause to arrest the suspect for driving under the influence").

{¶ 18} R.B.'s testimony also indicated that Shelton was acting strange and exhibiting odd behavior just prior to Officer Shaw's arrival on the scene. This included Shelton "loudly banging" on R.B.'s window asking if they could "just go," Shelton putting on her sunglasses "right before [Officer Shaw] pulled up," and Shelton moving "a bunch of stuff from her car into a bag in the car." "Odd behavior" is yet another indicia of intoxication. *See State v.*

*Macklin*, 5th Dist. Fairfield No. 17-CA039, 2018-Ohio-2975, ¶ 27, citing *State v. Farey*, 5th Dist. Stark No. 2017CA00137, 2018-Ohio-1466, ¶ 25; *see also State v. Zehenni*, 12th Dist. Warren No. CA2016-03-020, 2016-Ohio-8233, ¶ 23 (that defendant "behaved oddly during the traffic stop" was an indicia that the defendant was intoxicated).

{¶ 19} R.B. additionally testified that Shelton poured either hand sanitizer or perfume on her hands and then rubbed it "up and down" her arms "all the way up to her elbows." While there is nothing illegal about using either hand sanitizer or perfume after being involved in an automobile accident, as Officer Shaw testified, it is "not uncommon for people to try and mask the odor of an alcoholic beverage or marijuana by using perfumes or other substances to cover that odor up." Attempting to mask the distinctive smell of alcoholic beverages is further indicia of intoxication. *See, e.g., Zehenni*, 2016-Ohio-8233 at ¶ 41 (defendant attempting to retrieve a pack of chewing gum to presumably mask the odor of an alcoholic beverage was an indicia of the defendant's intoxication); *State v. Wardle*, 7th Dist. Mahoning No. 16 MA 0150, 2017-Ohio-9238, ¶ 11 (defendant "blowing cigarette smoke inside the vehicle as if to mask the smell of alcohol" was an indicia of the defendant's intoxication); *Bay Village v. Lewis*, 8th Dist. Cuyahoga No. 87416, 2006-Ohio-5933, ¶ 5 (smell of an alcoholic beverage "masked by cologne" was an indicia of the defendant's intoxication).

{¶ 20} Officer Shaw also testified that Shelton refused to allow him to complete the HGN test, and all other tests thereafter, by turning back towards her vehicle, opening her vehicle's driver's side door, and announcing "she was done." Refusing to submit to any standardized field sobriety testing is another indicia of intoxication. *See State v. Martin*, 9th Dist. Summit No. 28722, 2018-Ohio-1705, ¶ 14 (that defendant "refused field sobriety testing" was an indicia of the defendant's intoxication); *Findlay v. Jackson*, 3d Dist. Hancock No. 5-14-02, 2014-Ohio-5202, ¶ 43 (that defendant "refused to perform field sobriety tests"

was an indicia of the defendant's intoxication); *see also State v. Eldridge*, 12th Dist. Warren No. CA2015-02-013, 2015-Ohio-3524, ¶ 14 ("the refusal to take field sobriety tests may also be taken into consideration as an indicia of guilt under the circumstances"); *State v. Arnold*, 12th Dist. Butler No. CA99-02-026, 1999 Ohio App. LEXIS 4159, *5-6 (Sept. 7, 1999) ("[i]t is not a violation of due process to use a defendant's refusal to take a blood-alcohol test as evidence of guilt, even when police did not warn the defendant that the refusal could be used against him at trial").

{¶ 21} Because the trial court found R.B.'s and Officer Shaw's testimony to be "both reasonable and credible," we find this was more than enough evidence to support a finding of probable cause to place Shelton under arrest for operating a vehicle while under the influence of alcohol. This holds true despite the fact that Officer Shaw was unable to complete any of the three standardized field sobriety tests. It is well-established that "[t]he totality of facts and circumstances can support a finding of probable cause to arrest for DUI even in the absence or exclusion of field sobriety tests." *State v. Crotty*, 12th Dist. Warren No. CA2004-05-051, 2005-Ohio-2923, ¶ 14. It is equally well-established that "[p]robable cause does not have to be based, in whole or in part, upon a suspect's poor performance on one or more field sobriety tests." *Upper Arlington v. Wissinger*, 10th Dist. No. 13AP-922, 2014-Ohio-1601, ¶ 19.

{¶ 22} Rather than focusing on the facts that were elicited at the suppression hearing, the trial court instead focused on the facts that were not. This, as noted above, included the fact that Shelton provided Officer Shaw with her driver's license and proof of insurance "without any issues," did not stagger during the course of Officer Shaw's investigation into the accident, and did not "lose her balance at any point in time during the course of this investigation." This also included the fact that Shelton did not have "any slurred speech," "never swayed and had good balance," did not have any "issues of

communication," and did not have any problem "entering or exiting her vehicle."

{¶ 23} However, while certainly relevant factors when considering whether Shelton was under the influence of alcohol, "[n]ot every case will involve overt signs of intoxication[.]" *Cleveland v. Martin*, 8th Dist. Cuyahoga No. 105420, 2018-Ohio-740, ¶ 20. That is to say not every case will involve a driver who has trouble procuring his or her driver's license and proof of insurance. Nor will every case involve a driver staggering, swaying, having difficulty maintaining his or her balance, or exhibiting slurred speech. There is also "no requirement that an officer smell alcohol or drugs on or about the person, find an open container of alcohol, or obtain an admission of consumption." *State v. Rice*, 1st Dist. Hamilton Nos. C-160668 thru C-160670, 2017-Ohio-9114, ¶ 30. To hold otherwise would significantly limit the ability for law enforcement to protect the safety and security of motorists traveling on roadways throughout this district and the state as a whole.

{¶ 24} Unlike a finding of guilt that requires proof beyond a reasonable doubt, the question to be resolved at the suppression hearing in this case was whether Officer Shaw had probable cause to effectuate Shelton's arrest. This is not a high bar, *see Kaley v. United States*, 571 U.S. 320, 338, 134 S.Ct. 1090 (2014), and requires the state to establish only that "at the moment of arrest, the arresting officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, to cause a prudent person to believe the accused was driving under the influence of alcohol." *Way*, 2009-Ohio-96 at ¶ 30. This determination, as noted above, is based on the totality of the facts and circumstances surrounding the arrest. *Aslinger*, 2012-Ohio-5436 at ¶ 13, citing *Homan*, 89 Ohio St.3d at 427.

{¶ 25} The totality of the circumstances in this case – Shelton striking R.B.'s vehicle from the rear while R.B. was stopped at a red light on a hot, sunny, August day; Shelton's bloodshot, watery eyes; the odor of alcoholic beverages on Shelton's person; Shelton's odd

- 11 -

behavior just prior to Officer Shaw's arrival at the scene, which included Shelton putting on her sunglasses and pouring either hand sanitizer or perfume on her hands and arms, as well as Shelton refusing to allow Officer Shaw to complete any of the three standardized field sobriety tests – provided Officer Shaw with probable cause to effectuate Shelton's arrest for driving under the influence of alcohol. "That the state may fail to prove an offense by proof beyond a reasonable doubt does not mean that the much lower standard of probable cause did not exist to support the offense in the first instance." *State v. Mansour*, 12th Dist. Warren No. CA2015-06-051, 2016-Ohio-755, ¶ 26. Therefore, because we find merit to the state's arguments raised herein, the state's single assignment of error is sustained.

## Conclusion

{¶ 26} The trial court erred by granting Shelton's motion to suppress. As discussed more fully above, when considering the totality of the circumstances, there was more than enough evidence to support Officer Shaw's decision to arrest Shelton for operating a vehicle while under the influence of alcohol. That is to say Officer Shaw had probable cause to effectuate Shelton's arrest. Therefore, because the record indicates Officer Shaw acted lawfully at all times relevant, the trial court's decision granting Shelton's motion to suppress was error and must be reversed. Accordingly, finding merit to the state's single assignment of error, the assignment of error is sustained and this matter is reversed and remanded to the trial court for further proceedings.

{¶ 27} Judgment reversed and remanded.

RINGLAND, P.J., concurs.

PIPER, J., dissents.

**PIPER, J. dissenting.**

{¶ 28} At a motion to suppress hearing, the trial court assumes the role of trier of fact and is in the best position to resolve factual issues and evaluate the testimony given by the various witnesses. *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, ¶ 12. On appellate review, this court must accept the trial court's determination of facts as they apply to the legal issues raised. *Id.*

{¶ 29} I agree with the majority that in a probable cause determination, the supporting facts and circumstances must be "sufficiently strong." *State v. Christopher*, 12th Dist. Clermont No. CA2009-08-041, 2010-Ohio-1816, ¶ 16. I further agree that the trial court's determination must be based upon the totality of the surrounding facts and circumstances. *State v. Aslinger*, 12th Dist. Preble No. CA2011-11-014, 2012-Ohio-5436, ¶ 13. Additionally, the source of the facts and circumstances must be "reasonably trustworthy." *State v. Way*, 12th Dist. Butler No. CA2008-04-098, 2009-Ohio-96, ¶ 30.

{¶ 30} The totality of the surrounding facts and circumstances in this particular scenario can be extracted from the record in a way to support a probable cause determination. However, the totality of the surrounding facts and circumstances can also be extracted from the record in a way that does not support a probable cause determination. The deciding factor then becomes the trustworthiness assigned to the sources of information. Because the trial court heard the testimony firsthand and was in the best position to sort through the facts, the trial court's application of these facts and circumstances, in my opinion, should not be overturned.

{¶ 31} The parties have demonstrated in their briefs that the facts and circumstances can be characterized in various ways. Yet, it remains; the trial court was in the best position to judge the reasonable trustworthiness of the source of those characterizations. Since there is some competent, credible evidence to support the trial court's findings as to the

totality of the facts and circumstances in determining whether probable cause to arrest Shelton existed, the trial court should be affirmed. *See Leak,* 2016-Ohio-154 at ¶ 12.

{¶ 32} While it may be tempting to discredit the trial court's application of the totality of the facts and circumstances, I would decline such temptation. Because the trial court obviously determined the supporting facts and circumstances were not sufficiently strong for a probable cause determination, I would affirm the trial court.